On Motion to Dismiss.
BREAUX, C. J.
Appellee’s grounds-are: That the first bond given for a suspensive appeal was not large enough in amount even for a devolutive appeal. That the court was without authority to accept a supplemental bond for an additional amount of $1,000 on the ground that no sufficient bond had been furnished.
Defendant presented a motion in the district court to have the judgment declared final and executory.
Defendant’s complaint, as relates to that part of the amount, is that the court’s refusal to declare the final judgment executory for the possession of movables and immovables (to the value of over $23,000) was an error, as to which defendant in motion was entitled to relief.
In the original case, in which plaintiff sought to recover judgment against the defendant for the amount above referred to, plaintiff failed to obtain the judgment. It resulted in a nonsuit.
In this case plaintiff had obtained writs of attachment and sequestration.
After the nonsuit, plaintiff moved for a suspensive appeal from the judgment.
On plaintiff’s motion an order of appeal was entered, and the amount of the appeal bond was fixed by the court in the sum of $230. On that amount a suspensive appeal bond was furnished.
*751 Defendant interposed a motion to have the costs taxed within the 10 days for the appeal, but after the appeal bond before mentioned had been signed.
It being still within the 10 days, the court permitted plaintiff and appellant to furnish a supplemental bond in the sum of $1,000 for a suspensive appeal.
In answer to the motion above alluded to, filed by defendant to have the judgment decreed executory on the ground of insufficiency of the bonds, plaintiff and appellant interposed an exception of no cause of action and that the court was without jurisdiction, as the issues by the appeal had passed from the district court to this court.
On the hearing of the rule and of the exception thereto, testimony was heard, and it was disclosed by it that only a small amount of costs had been incurred at the time that the first suspensive appeal bond was furnished. Subsequently it became evident, still, as before stated, within the 10 days after the judgment had been rendered, that the sum due for costs was much larger than at first supposed.
It was then that the suspensive appeal bond, with the court’s sanction, was increased,, to the sum of $1,000.
The contention of plaintiff and appellant is that the defendant and appellee is protected by the order of the court fixing the amount of the bond, and that the court had discretion in fixing the amount of the bond.
It has heretofore been decided that, even if the date of the return be an error, if it was the action of the court, that one should not be made to lose on account of the court’s error.
Although this relates to the return day, there is very little difference between the amount of the bond and the return day of the appeal as relates to right of parties. There is some similarity between fixing the return day and fixing the amount of the bond. Dilzell v. Lehmann, 120 La. 273, 45 South. 138.
The court without hesitation evidently disposed of a similar question in Hughes v. Caruthers, 26 La. Ann. 530. The court in that case also had fixed the amount of the bond. It presents similar features to the case at bar. The court.held the order fixing this amount legal.
The article of the Code of Practice provides that the appellee shall give solvent security or a sum exceeding by one-half the amount for which judgment was given if the judgment was for a specific amount. Code Prac. art. 575.
But if the judgment is not for a specific sum, for instance, if the plaintiff’s demand, as in this case, results in a nonsuit, it has been repeatedly held that it then devolved upon the court to fix the amount of the bond. This discretion has always been recognized. The judge of the trial court is the only one who can fix the amount; otherwise, appellants might be called upon to furnish a bond for a large amount uselessly. An appellant would then, if he is a plaintiff, have to furnish an amount over and above one-half of his claim. It would be unreasonable to require such a bond from one who only had a claim against which a nonsuit had been entered.
In the next place, as relates to the amount of the bond, there is dispute between plaintiff and defendant as to whether the bond should be for one-half over the amount of the costs, or for the costs.
That question does not seem ever to have been directly settled. In some of the decisions it is decided that it should be one-half over the amount of the costs, and in other decisions it is decided that it should be for the costs.
In Armorer v. Chase, 9 La. Ann. 291, 61 Am. Dec. 209, the court held that it is not necessary to a suspensive appeal that the *753 .costs should be included in the amount of the bond.
And again, in Paland v. Railroad Company, 42 La. Ann. 294, 7 South. 899, the court held that there was security for the costs in the amount of the bond exceeding by one-half the amount of the judgment appealed from. In the matter here the costs are secured by the court’s order and the bond furnished in accordance therewith. It follows that there is no necessity of deciding the point just stated.
We will add, of course, the bond must secure the costs. Durand v. Judge, 30 La. Ann. 286.
We will return to this question later.
As relates to amount we will refer to details that we, for brevity’s sake, would be willing to avoid.
The following excerpt from defendants’ and appellees’ brief is plain enough regarding payment of costs (the principal bone of contention):
“On this rule evidence was administered showing amount of costs paid by plaintiff. The total cost paid by plaintiff included, as per admission of defendants, was $1,548.87.”
If these costs have been paid by plaintiff, as admitted by defendants, there remained only $499.55 to be secured by bond upon which defendants can insist. The two bonds were in amount sufficient to secure that amount, less the $499.55.
The bonds would be large enough to secure the costs which the defendants are interested in securing (and which appear beyond question as having been paid)..
But one of defendants’ contentions is that (as before stated) the court was without authority to accept the second bond as a supplement to the first; that the extent of the court’s authority was at an end after the first bond had been accepted.
We can only say as to this that the court has jurisdiction to inquire into the sufficiency of the bond, and if the application is made in time the court has jurisdiction to permit the amendment and correction of the error. The matter is Within the discretion of the district judge. Demarest v. Bierne, 36 La. Ann. 751; Hughes v. Caruthers, 26 La. Ann. 530.
2. The plaintiff obtained a writ of sequestration and attachment.
We leave the question ■ of costs for the present, and take up for decision the question whether the dissolving of the writs of sequestration and attachment by the final judgment of the court below was equivalent to a judgment decreeing the delivery of the property sequestered and attached.
That, if it be equivalent to such a judgment, the sheriff must replace the property in the hands of the person from whom it was taken. That is very true; but the bond of appeal has naught to do with the necessity of" replacing the property.
The bond for the sequestration and attachment must respond to that demand.
Defendants quote article 577 of the Code of Practice as conclusive upon the subject, to wit:
“Security shall be required for an amount exceeding by one-half the' estimated revenue derived from such real estate pending suit.”
On this particular point the grounds of defendants are: That the property produced a revenue, an amount of $1,090, to secure which the bond should have been given; furthermore, that the amount of money garnished in the hands of the garnishee is exposed to loss if the garnishee was to fail.
On this theory a very large bond should have been given. We can only in answer in substance reiterate: Part of the property has been bonded by plaintiff, and a large part of it is in the hands of the sheriff. The plaintiff is under bond to replace the property. He has furnished the forthcoming bond. Besides, he has furnished oth *755 er bonds to secure the defendants for all damages or losses, if the defendants were to lose the amount without legal cause.
No case has been referred to, and we found none, under which it can be claimed that an amount should have been inserted in the appeal bond sufficiently large to secure the defendants against the last-mentioned loss.
There is no judgment in this case condemning the defendants for anything except costs.
Prom the Durand Case, 30 La. Ann. 286, we quote as follows:
“If the judgment decree the delivery of a movable of perishable nature, the security for a suspensive appeal must be for an amount exceeding by one-half the estimated-value of such movable.” Code Prac. art. 576.
Here the judgment contains no such decree, either as to movable or immovable property. The judgment, as before stated, is exclusively one of nonsuit.
If at any time it becomes necessary to compel plaintiff in law to replace the property or to respond in damages (whether because of the failure of the garnishees), if such an action lies in case of their failure, the bonds furnished in the attachment and sequestration proceedings will be security.
We agree with the following from the text in 30 La. Ann. 285, cited supra:
“The right of appeal -is a precious one, and it should be favored and aided by the court. There should be no difficulty in fixing the amount of a bond for an appeal in any case.”
Algiers Brewing Company v. Judge, 46 La. Ann. 490, 15 South. 147, is also a ease in point.
Learned counsel for defendants argue that, although a defendant may have executed a judgment and paid all the costs, in order to appeal he must give security to secure even an amount.
Returning to the point we before said we would return:
When there are no costs, or the costs have been paid by plaintiff, by whom they were due, the trial judge, who has a large discretion in matter of the bond, fixes the amount of the appeal bond to secure costs.
Even if the amount should be less than the amount of costs, under the circumstances here it would afford no ground for dismissal of the appeal.
It was held in the Caruthers Case, cited supra, that the motion to dismiss must be-overruled. The bond, being for an amount fixed by the judge a quo, was sufficient to maintain the appeal.
When appellant gives bond for the amount fixed by the court, the appeal cannot be dismissed. Elder v. New Orleans, 30 La. Ann. 229. The appellant, on furnishing bond in the amount fixed by the court, satisfies the requirement of the law, citing the case just cited.
Jurisprudence interpreting the laws of practice that there is discretion in the judge a quo; that it is a matter within his discretion. Demarest v. Bierne, 36 La. Ann. 752.
To this discretion some consideration must be given. Of course, discretion should not be arbitrarily exercised. Here arbitrariness has not been exercised arbitrarily.
As relates to discretion, when delegated, it leaves matters to the personal judgment of the person to whom delegated — to the prudence, knowledge, and wisdom of the officer. An arbitrary rule does not come in to strike with nullity his acts, if they are such as to secure the rights of all the parties concerned. Discretion, if within the authorized limit, will not be interfered with by an appellate court.
We have given the questions involved here our careful attention, and have left them convinced that there is no good ground to dismiss the appeal..
The motion to dismiss is overruled.
*757 Statement of the Case — On the Merits.
NICHOLLS, J.
Plaintiff alleged in his petition that Charles E. Letten was indebted to him in the sum of $75,000, for this, to wit: That the said Letten, as a clerk in the office of petitioner, stole, embezzled, and appropriated to his own use the funds of petitioner in the amount above stated, and petitioner reserves, the right to claim from said Letten, in this or any other proceeding, any additional sum which the said Letten may owe him above that herein claimed. That the said Letten has property in this parish and within the jurisdiction of this court subject to seizure, and that a writ of attachment is necessary to protect the rights of petitioner in the premises.
That on September 23, 1905, by act before J. F. Meunier, notary public, in this city, the said Letten purchased from Felix Quinn, with the money stolen as aforesaid from petitioner, property which he described. That the said purchase was made in the name of one Miss Virginia Reed, a person totally without means, and who knew when said purchase was made that it was made with money stolen from petitioner as aforesaid. That by another act before the same notary on October 25, 1905, the said Letten purchased in the same way, and in the same person’s name, with money stolen as aforesaid, with full knowledge thereof in the said Virginia Reed, from Leon S. Holzhalb, property which petitioner described.
That at times unknown to petitioner, and with money stolen as aforesaid from him, the said Letten purchased a large quantity of household furniture and movable effects, and turned them over to the said Virginia Reed, who now has possession of same at No. 323 Dauphine street; that the said Virginia Reed knew, when said property was purchased and turned over to her, that it was purchased with money stolen as aforesaid from petitioner; that of the money stolen from petitioner as aforesaid the said Let-ten turned over and delivered to the said Virginia Reed, she having full knowledge as to where said money ‘ came from, large amounts of cash at various times, some of which was deposited by her in banks in this .city, and where same still remains on deposit as follows: In the Germania Savings Bank & Trust Company, book 65,639; in the Germania Savings Bank, book 34,072 — ■ all of which deposits are now held to the credit of Virginia Reed in the Commercial Germania Trust & Savings Bank, which purchased the assets of the said Germania Savings Bank, and assumed all of its liabilities; and book 11,439 of the Hibernia Bank & Trust Company.
That with money stolen from petitioner as aforesaid the said Charles E. Letten purchased on August 7, 1907, by act before the said J. F. Meunier, notary public, from Pierre Guesnon Charbonnet, property (which he described).
That the said Georgie Campbell, who is the mother of the said Virginia Reed, was and is a person totally without means; that said property was purchased by the said Letten at the suggestion of the said Virginia Reed, and put in the name of her mother as aforesaid, both of said parties well knowing that the money with which said property was purchased was stolen from petitioner as aforesaid.
That said purchases and said bank deposits having been made with the money stolen from petitioner aforesaid, petitioner is entitled to have said property decreed the property of the said Letten, so that petitioner’s claim against him may be exercised against said property.
That he feared that during the pendency of this suit the said Virginia Reed and the sail Georgie Campbell will endeavor to dispose of said property or incumber same, and that a sequestration thereof was necessary *759 to protect petitioner’s rights in the premises.
In view of the premises, the annexed affidavit considered, and upon his furnishing-bonds as required by law and as fixed by the court, petitioner prayed that a writ of attachment do issue herein, directed to the •civil sheriff for this parish, commanding him to seize and take into his possession all of the property of the said Letten, wherever found, and particularly that hereinabove •described; that a writ of sequestration do issue, and under same the civil sheriff do seize all the real estate, personal property. ,and bank accounts described in the petition; that the said Charles E. Letten, the said Virginia Reed, and the said Georgie Campbell, both of whom are femes sole, may all be cited to appear and answer this petition; that in due course of law there be judgment herein in favor of petitioner and against the said Charles E. Letten for the full sum of $75,000, with legal interest from judicial demand and costs of suit, and further judgment against the said Virginia Itecd and the said Georgie Campbell declaring that they have no title to the property herein described, but that same was liable to petitioner's claim against said Charles E. Letten; that the writs of attachment and sequestration herein issued be maintained, and the property attached and sequestered sold to satisfy petitioner's claim; and that same be paid by preference out of the proceeds of said property over and above all other creditors.
The court ordered that a writ of attachment and a writ, o’f sequestration issue as prayed for — the former on plaintiff’s furnishing a bond for the amount fixed by law, and the latter on furnishing a bond for $5,-000. Both bouds were furnished. The writs were issued and executed by the sheriff. Subsequently supplemental petitions were successively filed on September. 13, 1907, September 18, 1007, September 21, 1907, October 24, 1907, December 21, 1907, December 28, 1907, and January 12, 1908, so as to include the furniture and personal effects in the house of Virginia Reed, No. 323 Dauphine street, three lots of ground in the city of Baton Rouge, and the jewels in Virginia Reed’s possession or under her control.
On September 30, 1907, Virginia Reed and Georgie Campbell filed the following exceptions to the suit:
(1) That the petition, and the supplemental, second supplemental, third supplemental, and fourth supplemental petitions, filed herein, fail to disclose a right or cause of action.
(2) That said plaintiff is absolutely without right to stand in judgment and maintain this suit, as appears from the petition and supplemental petitions filed herein.
(3) That the averments contained in plaintiff’s original and supplemental petitions are too vague, indefinite, and insufficient to authorize the maintenance of this suit.
(4) That authentic acts of sale of immovable property cannot be attacked or in any way inquired into in the manner and form attempted by plaintiff.
They prayed that these exceptions be maintained, and the writs of attachment and sequestration be set aside, and that plaintiff’s suit be dismissed, with costs. The court refused to set aside the writs of attachment and sequestration, and overruled the exception as to the vagueness of the petition and the right and capacity of the plaintiff to bring the action.
In a supplemental petition filed on September 18, 1907, plaintiff, alleging that the exact amount of Letten’s indebtedness to him was $116,190, altered the prayer of his petition so as to pray judgment for that amount.
In a supplemental petition filed October 24, 1907, plaintiff, reiterating the allegation that Letten had stolen and appropriated *761 from him the sum of $116,190, averred that of that money he had given to Virginia Reed the sum of $75,000, which she had received well knowing that the same had been stolen from petitioner; that, having so received said sum, she had deposited part of the same in bank and had used part of the same in the purchase of property, real and personal; that said money so deposited and the properties purchased by her were for Letten, and the same belonged to him. In the event the court should hold that the title vested in Virginia Reed, and that the property could not be recovered as Letten’s property, petitioner prayed that he have judgment personally against Virginia Reed for $75,000, with legal interest.
On November 5, 1907, Virginia Reed filed an exception to the supplemental petition of October 24, 1907, pleading:
(1) That the same changed the form and nature of the original demand, and is so contradictory and conflicting in its character as to render its consideration impossible.
(2) That the said supplemental petition comes too late, having been filed after plaintiff! had set forth his cause of action, on a basis entirely at variance with the allegations of said supplemental petition.
(3) That the ground urged in said supplemental petition operated as an abandonment of the main suit, and therefore cannot be entertained.
(4) That the said supplemental petition failed to disclose a legal cause of action against defendants.
Defendants prayed that this exception be maintained, and the lastly filed supplemental petition of plaintiff be dismissed, with all cost, and for general relief.
On December 6th this exception was overruled.
In a supplemental petition filed December 21, 1907, plaintiff reiterated his allegations that Letten had stolen from him $116,190 and had given $75,000 of the same to Virginia Reed, as had been before averred by him-r that of that amount Virginia Reed had given her mother, Georgie Campbell, $8,000, who-well knew at the time that it had been stolen from petitioner; that Georgie Campbell-had with that money purchased certain property and taken title to the same, and that the same really belonged to Letten; but,should the court hold that ownership of the-same had vested in Georgie Campbell and could not be recovered as Letten’s property, then petitioner prayed for personal judgment against Georgie Campbell for $8,000,-as having been stolen from him by Letten,- and by him, through Virginia Reed, given to Georgie Campbell.
On December 21, 1907, Virginia Reed and also Georgie Campbell filed exceptions to the supplemental petition of December 21st, pleading:
(1) That the said supplemental and amended petition changed the form, nature, and character of the original suit filed herein from a summary action, based upon allegations that the property and effects of ex-ceptors were purchased by Charles E. Let-ten, a defendant herein, and therefore are-the property of said Letten, subject to the writs of attachment issued herein, into an-ordinary suit against defendant, and therefore was contradictory and not in accordance with law governing the subject-matter.
(2) That said plaintiff could not carry two separate and distinct suits in the same proceedings ; that he must elect which one of the proceedings he desired to make his issue on.
(3) That the allegations of said supplemental petition were antagonistic and contrary to those of the original petition, and could not be allowed.
(4) That the said supplemental petition was too vague, indefinite, and uncertain to-enable defendant to plead thereto; that she- *763 desired to know when and in what manner and in what form her indebtedness to plaintiff arose; that she could not be required to plead to vague and random allegations of indebtedness, without being informed of the time, date, and place at which and on which the said indebtedness is based.
Defendant and exceptor Virginia Reed prayed that these exceptions be maintained, and plaintiff’s suit be dismissed, with all costs.
But, in the event that the prayer to dismiss the suit be not allowed, then she prayed that plaintiff be ordered to elect upon what branch of this case he desires to put at issue, whether on the original pleadings, in which attachments had been issued, or upon the ordinary action for a money judgment, and for all costs and general relief.
On January 10, 1908, these exceptions were overruled. On July 10, 1908, Virginia Reed and Georgie Campbell answered. Both pleaded a general denial and set up reconventional demands. The latter were subsequently discontinued. Prior to this, the defendant Charles E. Letten having confessed judgment, judgment had been rendered by the court on the ]0th of September against him and in favor of the plaintiff, John Fitzpatrick, for the sum of $110,190.08, with legal interest thereon from September 12, 1907, and maintaining the writ of attachment and sequestration, which had issued, in so far as Charles E. Letten was concerned, and decreeing that the claim of the plaintiff, as against jhe said Charles E. Letten, be paid by preference out of the proceeds of the sale of said property, and reserving the rights of the other defendants. On June 22, 1908, the court rendered judgment in favor of defendants Virginia Reed and Georgie Campbell, and against the plaintiff, John Fitzpatrick, dissolving the several writs of sequestration and attachment which had issued in the case, .and dismissing plaintiff's demand as of non-suit, and at his costs. From that judgment plaintiff has appealed.
In the brief on behalf of the appellant, Fitzpatrick, his counsel say that he asserts that he is entitled to an ordinary judgment against Virginia Reed in the sum of $75,000 and an ordinary judgment against Georgie Campbell for the sum of $5,800, and that the attempt to directly reach the title to the real estate is not herein urged.
Virginia Reed and Georgie Campbell have answered the appeal, praying that the judgment of the court appealed from be amended, so as to decree that judgment be rendered in favor of defendants, dissolving the writs of sequestration and attachment herein, and dismissing plaintiff’s suit absolutely, with all costs.
Opinion.
The first matters to which our attention is called are the exceptions filed by defendants on November 5, 1907, to the supplemental petitions of the plaintiff filed on October 24, .1907, and the exceptions filed December 21, 1907, by Virginia Reed and Georgie Campbell, to the supplemental petition filed on December 21, 1907. The prayer of the original petition was that Charles Letten, Virginia Reed, and Georgie Campbell be cited, that writs of attachment issue to seize all of the property of Letten, wherever found, that a writ of sequestration issue ordering the civil sheriff to seize all the real and personal property and bank accounts mentioned in the petition, that in due course plaintiff have personal judgment against Letten for $75,000, that he have judgment against Virginia Reed and Georgie Campbell declaring that they have no title to the property described in the petition, that the writs of attachment and sequestration be maintained, that the property attached and sequestered be sold to satisfy plaintiff’s claim, and that he be paid by preference out of the proceeds over all other creditors.
*765 Under -the original petition Virginia Reed and Georgie Campbell were incidentally made parties to the suit, and only in reference to tlieir rights of ownership in the property attached and sequestered. They were not sought to be made in any manner personally liable.
In the supplemental petition plaintiff's ■claim of ownership in the property attached and sequestered, asserted in the original petition, is abandoned, and personal judgments are sought to be recovered against Virginia Reed for the amount of $75,000 and against Georgie Campbell for the sum of $5,800.
The grounds of these exceptions appear here in the statement made of the pleadings.
Defendants additionally submit to us for decision whether or not .-the plaintiff has in the premises a right of action against them. Their counsel insist that the money stolen by Letten was money belonging to the state, and not to Fitzpatrick, and that, if they be liable to any one, it is to the state; that when the plaintiff reimbursed the state he was not subrogated to the state’s right of •action.
There is no doubt that, when an agent for •collection receives moneys for his principal, the moneys collected belong to the principal, and that he can under certain circumstances reclaim and recover them in the hands of third persons.
If, however, while the moneys of the principal are in the hands of the agent, they are .stolen from him, and the latter, in discharge of his obligations as agent, pays the principal the amount of his indebtedness in other moneys, he becomes, ipso facto, legally subrogated to all rights of ownership which the principal had in the particular money which had been stolen. It could not be urged as a -defense by the person who had stolen that money, or by any one who would have been liable to the principal in an action for or on account of the money stolen, that the action should have been brought by the principal, and not by the agent.
AVe have given a great deal of care to an examination of the evidence in this case, and have reached the conclusion that we would not be justified in reversing the judgment appealed from. The trial judge evidently attached no probative force to the testimony given by Letten, except as it affected himself; nor do we. His testimony is borne out by that of no other person than the colored girl, Cressy Benjamin, which itself is entitled to no weight. The trial judge, from a technical point of view, should have allowed the admissions of AUrginia Reed to have been introduced (the action being not a criminal but a civil action), and disregarded them later when shown to have been made under duress. The case was not tried before a jury, but by the judge alone. AVe ascertain from the record what those admissions were, and, had they been formally introduced, plaintiff’s case would not have been strengthened. The circumstances under which they were made were not such as to warrant us in making use of them in favor of the plaintiff. The strongest factors in favor of the plaintiff’s claim are the facts which the evidence developed in reference to the condition of Virginia Reed before her illicit connection with Letten began and that since those relations commenced.
We do not think it was possible for her to have acquired all the means she is shown to now have from the working capital which she had at the time those relations originated, nor from that capital and her industry and occupations since. Her present financial condition is evidently due to a great extent to outside aid and assistance from some quarter, and everything points to that aid and assistance as having been furnished by Letten. How far her present financial condition is due to her own exertions, and how far due to outside assistance, we are not able to say. *767 The proposition of plaintiff’s counsel that, if defendant has been shown to have received from Letten any part of the money stolen by him from Fitzpatrick, she is entitled to retain of her present means only so much thereof as she has affirmatively shown to have been earned by herself, and the manner of its acquisition independently of Letten, is simple and convenient enough; but it is not legally tenable.
The defendant and her mother are shown to have been hard-working, laborious persons, and to have acquired some property by methods beyond criticism. She has no doubt acquired property by keeping, at times, boarders, disreputable and otherwise; but that is a matter which cannot be taken advantage of by the plaintiff. We do not accept as true defendant’s statements in regard to her mother and herself having brought with them here from South Carolina the large amounts of money which she testifies they did. Those statements are improbable in themselves, and inconsistent with their mode of living and acting for years after coming to Louisiana. It is undeniable, however, we think, that in 1900 (before Letten had begun to steal from Fitzpatrick) defendant had saved, from one source or other, money which unquestionably belonged to her. That money and its proceeds she is entitled to hold, so fax as the plaintiff is concerned.
The condition of the record is not such as to furnish us the basis for a judgment for any particular amount in favor of the plaintiff. Were we to render such judgment, it would be by arbitrarily fixing its amount. That we cannot do.
The case is one of hardship; but we find ourselves constantly confronted with hard cases, which we are unable to judicially reach and remedy. This is one of that kind. The conclusions which we have reached on the merits of the case make it unnecessary really for us to decide the exceptions taken by the defendants in respect to being brought into the case as parties by supplemental petition to meet an issue entirely separate, different, and distinct from that for which they had been made parties at the institution of the suit. It may not be amiss, however, for us to say that we think that that exception was well taken.
For the reasons herein assigned, the judgment appealed from is hereby affirmed.