No. ——.
### First Circuit Appeal.

---

## ARMAND MORIN AND WIFE v. ILLINOIS CENTRAL RAILROAD COMPANY

(Feb. 18, 1925, Opinion and Decree)
(May 5, 1925, Rehearing Refused.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Railroads—Par. 63, 64, 77.**

   It is a duty of the traveler crossing a railroad track to stop, look and listen. Where deceased stopped but not before he got on the ties or track, it is extremely doubtful if he did listen and it is certain that he did not look before he got on the track or after. Plaintiff is clearly contributorily negligent.

2. **Louisiana Digest—Railroads—Par. 78.**

   The rule of the "Last Clear Chance" will not be extended to cases where plaintiff's own negligence extended up to and actually contributed to the injury. (Civil Code, Art. 2315. Editor's note.)

   Appeal from the Parish of Tangipahoa, Hon. Columbus Reid, Judge.

   This is a suit for damages for the death of plaintiff's son by being hit by a railroad train.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

J. H. Inman, of Ponchatoula, attorney for plaintiff, appellee.

Kemp and Buck, of Amite, attorneys for defendant, appellant.

MOUTON, J.   Ambroise Morin, son of plaintiffs, was killed by the Panama Limited, passenger train of defendant company, Feb. 2, 1924, at 9:30 a. m., at a public crossing, Fifth street, Independence, Louisiana.

A judgment for $10,250.00, based on the verdict of a jury, was rendered in favor of plaintiffs against defendant company from which it prosecutes this appeal.

The deceased, Ambroise Morin, was on a business mission and was travelling afoot from the west to the east side of the railroad tracks at the crossing of 5th street when he met with the accident. At this crossing the defendant company has two main tracks and a switch track. One of the main tracks is on the west side, and the other, on the east side of the right of way. The deceased was killed on the west track by the Panama Limited passenger train, which was travelling southward at the time. A freight train was also at that time travelling northward on the track on the east side of the right of way.

It is well established by the record that the deceased was standing on the track or on the croos-ties near the trail, when he was struck by the cow-catcher or engine and killed. On this question there is practically no discrepancy in the testimony of the witnesses for plaintiffs and defendant. Many of the witnesses for plaintiffs say he had been standing there two or three minutes before the collision occurred. Whether that long or not, it is however, indisputably true that deceased was in that position, and was just about turning his face westward, presumably upon hearing the distress signal, when he was struck. It is shown by the record and without contradiction, that the track where deceased was killed, is straight for a mile or so both ways and that there was at that point no obstruction whatsoever which could have obstructed the view of the deceased in either direction, north or south. The train that killed him was coming from the north. Almost all, if not practically all of the witnesses unite in saying there was nothing which could have prevented him from seeing the train. The deceased, as it is alleged by plaintiffs, was at that time in his 18th year, in good physical condition, and of normal senses. As he stood on the track or near thereto for two or three minutes, and if the train was travelling, as most of all our plaintiffs' witnesses say, at about 30 or 35 miles an hour, the deceased could, over this straight track which was free of all obstructions to the view, have unquestionably seen the advancing train at a distance of at least half a mile before it reached the spot where he was standing, if he had cast a glimpse or looked northward. If he had looked in that direction, as it was his duty to do before he got dangerously near the track or after he got on it, he could, as he was on foot, in the twinkling of an eye, have stepped aside and have avoided the accident. The proof shows, and which comes from the testimony as plaintiffs' witnesses, that a freight train was at the time of the collision moving northward on the main line on the east side of the right of way and that deceased was looking in that direction. As he was going on, on his little business mission in that direction, he had, no doubt, his attention attracted to that train watching for it to clear the way for his passage across the railroad tracks. He was evidently oblivious to his surroundings, and

when he heard the shrill blasts of the Panama Limited which was coming from the north, he turned his head and made a vain effort to escape the accident. The evidence shows clearly that two or three blasts of the distress signals were given by the engineer of the Panama Limited at least thirty or forty feet before the train entered the crossing where deceased was standing. We believe the evidence shows clearly, that deceased had he been ordinarily conscious of his surroundings, considering the situation where he was placed, that he could not have failed to have heard the signals in time to have afforded him ample opportunity to avert the occasion. Even if such signals were not given, which could be inferentially drawn from the testimony of some of the witnesses for plaintiffs, the engineer * was nevertheless, as said in Weil vs. Bell, 155 La. 1099, 99 South. 887, justified in assuming that the deceased would use his sense of hearing to discover the approach of a heavy passenger train travelling 45 miles an hour. Let us say here, however, that the Panama Limited was not a heavy passenger train and that the noise caused by the moving freight train deadened the rumbling noises of the advancing train, the fact remains, and the dominant one here, that deceased at that hour of the day, 9:30 in the morning could by the most casual exercise of his sense of sight, have seen the train a good distance away, and which would have given all the time he needed to step aside to allow the train to pass on without danger.

Much is said by counsel for plaintiffs about the train in question travelling in excess of the speed limit of 15 miles an hour fixed by the ordinance of the Town of Independence. On this point the evidence is extremely conflicting. Witnesses for plaintiffs say the train was going at the time at 30 or 40 miles an hour. The train crew, including the engineer, fixed the speed at which they were travelling at about 12 to 14 miles an hour. The proof shows that the train had reached Independence exactly on schedule time, and there was therefore no necessity for such a speed as 30 or 40 miles an hour contended for by plaintiffs. It is more likely that the crew could have a more correct appreciation of the speed of the train in their charge, than residents of the town who had no special interest in such a matter. Even if the engineer in the instant case failed to observe the ordinance of the Town of Independence, and was travelling in excess of the municipal speed limit, this did not in any way excuse the deceased from himself exercising the degree of care which the law required of him. May vs. Texas & P. Ry. Co., 123 La. 647, 49 South. 272-3, Elliott (2nd Ed.) p. 1171.

The degree of care required of the traveler crossing a railroad track is to stop, look and listen when this would be effective, State vs. Glenn, 153 La. 153, 95 South. 534. In this case deceased stopped but not before · he got on the ties or track; it is extremely doubtful if he listened and it is certain he did not look either before he got on the track or after.

In Tucker et ux. vs. Illinois Central R. Co., 141 La. 1101, 76 South. 212, the court said:

"No failure on the part of the railroad company to do its duty will excuse any one from using the senses of sight and hearing, upon approaching a railway crossing, and whenever the due use of either senses would have enabled the injured person to escape the danger, the injury is conclusive evidence of negligence, without any reference to the railroad's failure to perform its duty."

In this case, it is doubtful, as before stated, that the deceased used his sense of hearing, but it is manifest that he did not use his sense of sight, either of which

would have enabled him "to escape the injury he received, is therefore conclusive evidence of his negligence," "without any reference to the railroad's failure to perform its duty," if it could be accepted as proved, that the defendant had failed in this respect. Plaintiffs invoke the doctrince of the "Last clear chane," as an exception to the general rule of contributory negligence. It must be observed while referring to this subject, that the degree of contributory negligence does not enter into the consideration of this doctrine as the rule of comparative negligence, has not been accepted in our jurisprudence. Belle Alliance Co. vs. T. P. and P. R. Co., 125, La.: 777, 51 South. 846.

The rule of "last clear chance" will not be extended to cases where the plaintiffs' own "negligence extended up to, and actually contributed to the injury". Fitzpatrick vs. Letten, 123 La. 761, 49 South. 494. There can be no doubt that deceased up to the very moment of the collision could have escaped injury by stepping aside of the railroad track, and it is therefore obvious that "his negligence extended up to, and actually contributed to the injury" or in other words, was concurrent therewith. Under the state of facts and the law hereinabove referred to, it is clear that plaintiffs have no right to recover, and that the judgment appealed from is erroneous.

It is therefore ordered, adjudged and decreed, that the verdict of the jury and the judgment rendered theron, be avoided and reversed, and it is further ordered that the demand of the plaintiffs be and is hereby rejected at their cost in both courts.