## PIGOTT v. BATES.
### No. 1043.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1932.

A. Miles Coe and Long & Wilkinson, all of New Orleans, for appellant.

Bascom D. Talley, of Bogalusa, for appellee.

LE BLANC, J.

The appeal in this case is from a judgment in favor of the plaintiff, William John Pigott, who brought this suit in his capacity as administrator of his minor son, Edwin Pigott, against W. Lawrence Bates. The demand is one for damages for personal injuries sustained by young Pigott when he was run into, while riding his bicycle, by one Howard Adams, who was driving Bates' truck. The petition charges the driver of defendant's truck with negligence in driving at an excessive speed and recklessly; in making no effort to apply the brakes of his car and stop it until the child was hit; in becoming excited and not slackening his speed, but instead increasing it and driving to the right of the street after the child was nearly across; and in failing to avoid the accident by taking advantage of the last clear chance. The young boy suffered a fractured skull, for which he had to undergo a serious operation. The demand, including hospital expenses, is for $10,000. Judgment below was for $1,250.

Defendant first filed an exception of no cause of action based on a contention that the petition, by some of its allegations, disclosed contributory negligence on the part of the injured boy and other allegations which nullified those of negligence on the part of the truck driver. We have carefully considered the petition from both of the points of view stated, and have come to the conclusion that as to the contributory negligence of the young boy there is presented a matter which is one of defenses, and with regard to whatever averments it may contain which would in any way tend to nullify one of the charges of negligence made, there are sufficient allegations otherwise to sustain a cause of action against the defendant.

The defense is a denial of the negligence charged against defendant's truck driver and an averment that the proximate and sole cause of the accident was the negligence of the boy in suddenly riding a bicycle across the street in an unusual movement contrary to the normal way in which traffic moves, and in suddenly coming from behind a moving truck which was about to meet defendant's truck. As an alternative, defendant pleads the contributory negligence of the boy as a bar to his recovery.

The accident occurred in the city of Bogalusa in the early afternoon of July 21, 1931. Several boys were congregated in front of the store of Mr. A. J. Mevers, which is situated on the northwest corner of Avenue F and Seventh street. Both of these streets are forty feet wide. Right at the intersection, Avenue F begins sloping downgrade, going north, which is the direction defendant's truck was going. The sidewalk on the north side of Mevers' store is ten feet wide. The store is next to the sidewalk and therefore ten feet from the street proper. In front of the store, at a point about fifteen or twenty feet from the point formed by the intersection of the sidewalks along both streets, is a bench on which these boys, who congregated at the corner, sat. They were in the habit of riding their bicycles, leaving from that bench and going in a semicircular path across Avenue F to a sloping ramp in front of the Ne-Hi Bottling Plant directly across the avenue from Mevers' store, and returning to their starting point. Although it is not shown that the injured boy was doing so at the time of the accident, it may be inferred from some of the testimony that sometimes some of these boys would grab onto a moving vehicle to let it carry them up the grade a bit while making their circular turns in the street. That this was a dangerous pastime is no better indicated than by the undisputed testimony of Mrs. Matilda Maas-

sen, who lived next door to Mevers, and who, just a moment before the accident, had warned the boys about it. The older Pigott boy, Wilton, heeded her advice and stopped riding. The injured boy seemed to have been a bit bolder and continued in his sport. Mrs. Maassen hardly had time to get up from the rocker in which she was seated on her front porch and turn to go into the house when she heard the crash in which the boy was hurt. She states that it was because of her nervousness and the fear that some of them would be injured that she left the porch.

Whilst these boys were playing on the bench in front of Mevers' store, a truck which belonged to Russel-Seal Furniture Company was parked on Avenue F some distance north of the bench. Durwood Seal, the driver of that truck, estimates the distance as being about two car lengths from the bench. It is shown that the frontage of Mevers' store on Avenue F is sixteen feet, and we think it is safe to assume that a Ford truck, the kind in question here, is not less than seven or eight feet long. Therefore, taking into account the ten feet of sidewalk on Seventh street, sixteen feet of the Mevers' store frontage, and fifteen feet, the two car lengths, it would seem that this truck was parked forty feet from the north line of Seventh street where that street and Avenue F meet. We stress these measurements because of the importance of deciding where this truck and defendant's met in the intersection, and whether the boy came within the vision of the driver of defendant's truck, after emerging from behind the other truck, in time for the defendant's driver to avoid running into him.

As Seal left his parking place on Avenue F running in low gear and going very slow, Edwin Pigott, the injured boy, followed on his bicycle directly behind the truck. Seal says that when he left the parking place, a boy followed his truck; he not knowing at that time that it was the one who was afterwards hurt. He says that he thought the boy was attempting to catch hold of his truck, and when he entered Seventh street, he looked back and saw that he was coming south, but too far back to catch up with him. It was at that moment also, in turning his gaze back to the front that he noticed the defendant's truck coming north, or toward him. It was then within thirty or forty feet of his. He does not state, as indeed we can hardly expect any one to do so, the exact point where the two trucks met, but it was certainly within the intersection of the two streets. Taking into account the fact that he had forty feet to go to get to the north line of Seventh street and traveling very slow, and that the other truck, on the contrary, was going twenty-five or thirty miles an hour, and that it was forty feet from him as he entered Seventh street, it

would seem that the meeting was bound to have been either in the center of the intersection or north of that point. This would have placed the defendant truck between twenty-five and thirty feet from the north pedestrian traffic line on Seventh street, just north of which, some five or six feet, the injured boy veered to his left when he left the back of the Seal truck to go across Avenue F. Based on these figures, the distance here established tends to corroborate the testimony of Howard Adams, the driver of defendant's truck, that he passed the Russel-Seal truck right around the middle of Seventh street. It also tends to corroborate the testimony of Mr. A. J. Mevers that when the two trucks were abreast of each other the front wheels of the Bates truck were twenty to twenty-five feet from the north pedestrian traffic line on Seventh street. Adams, going at from twenty-five to thirty miles an hour, was within the speed limit as fixed by the city ordinance of Bogalusa. Taking into consideration his rate of speed, the rather slow speed of the Seal truck in comparison, and the fact that the boy on the bicycle was also moving at the rate of about eight miles an hour when he suddenly emerged from back of the Seal truck and started across the street, it is readily conceivable how it could all have transpired within such a short period of time as to have made it next to impossible for the driver of defendant's truck to have avoided striking the boy. Adams was placed suddenly in a situation of imminent hazard or peril, brought about mainly by the actions of the boy, and under such circumstances the law does not hold the driver of an automobile to the exercise of the same calm, deliberate judgment as one who, apprehending the danger in time, can take the proper steps to avoid it. This rule is so well recognized now that it is hardly necessary to point to authority. This court has had occasion recently to apply it in the cases of Martin v. Cazedessus, 15 La. App. 100, 130 So. 129, and Daigle v. Cobb, 18 La. App. 212, 138 So. 213.

Counsel for plaintiff urges, as proof of the excessive speed of the driver of defendant's truck, the fact that he did not come to a stop until he had gone thirty-five feet beyond the place where the boy was struck. We believe that the downgrade of the street right at that point could account for some of the distance that it took, and besides, in an unexpected emergency, a person should not be held to the duty of bringing an automobile to a complete stop in the same distance as when he is making a test to ascertain the number of feet in which, going at a given rate of speed, it can be stopped. The Supreme Court, in the case of Elmendorf v. Clark, 143 La. 971, 79 So. 557, 560, L. R. A. 1918F, 802, noted the fact that experts admitted that it made "quite a difference wheth-

er the stop is being made by way of testing the possibilities in that regard, or is being made in an unexpected emergency."

■ But even though it be conceded that the driver of the truck was negligent in some respect, we are of the opinion that the boy's contributory negligence stands as a bar to his recovery.

■■ Plaintiff's counsel strenuously contends that the Pigott boy, because of his youth, could not be guilty of contributory negligence. By his own testimony, we learn that the young boy reached his fourteenth birthday in December, 1931, and therefore when the accident happened in July of that year, he was more than thirteen and a half years old. He was in Seventh-B grade at school the term before he was injured and had been promoted to Seventh-A. He had built the very bicycle he was riding at the time he was hurt from discarded parts of an old one he owned and parts he had obtained from another boy, and he also knew how to run an automobile. He delivered papers in the city of Bogalusa, and no doubt was familiar with the principal streets and conditions generally prevailing on them. The evidence shows that he was playing with boys of more advanced age than he at the very corner where the accident took place. Our impression from these facts, and from a careful consideration of the manner in which he testified, is that he was a boy of such mature age and judgment as to be fully capable of appreciating the dangers incident to boys playing on paved streets in a city the size of Bogalusa. Whether a child may be guilty of contributory negligence "depends upon the particular circumstances of each case and must be determined in connection with his age and ability to judge of the conditions." So held the court in the case of Westerfield v. Levis, 43 La. Ann. 63, 9 So. 52. Tested by this rule, we are firmly of the opinion that young Pigott could be guilty of contributory negligence, and we so hold. His counsel, however, argues that he was not so guilty because he had a right, the same as any pedestrian, to be in that part of the street at the moment he was struck. If he had been crossing the street in the pathway regularly used by pedestrians for that purpose, we would be inclined to agree with his counsel. But the fact, as shown by the evidence, is that he was five or six feet north of that crossing. Moreover, it must be remembered that he made this crossing in this unusual place after suddenly darting from behind a moving truck which he was following, and which necessarily concealed him for some distance at least from the view of drivers coming from the opposite direction.

■■ The learned trial judge decided the case on the doctrine of the last clear chance.

We have shown that in our opinion it was impossible for the truck driver to have stopped in time, after seeing the boy, to avoid striking him. We are of the further opinion, however, having held the boy guilty of negligence, that the doctrine of the last clear chance does not apply, where, in a case like this, the negligence of the injured person continued up to the moment of the accident, so as to have been a contemporaneous, contributing cause. That is the rule as laid down in most jurisdictions, according to Blashfield, Cyclopedia of Automobile Law, vol. 2, p. 1291. In Morin & Wife v. Illinois Central Railroad Co., 1 La. App. 727, this court held that: "The rule of 'last clear chance' will not be extended to cases where the plaintiffs' own 'negligence extended up to, and actually contributed to the injury.'" The case of Fitzpatrick v. Letten, 123 La. 761, 49 So. 494, 17 Ann. Cas. 197, was cited as authority.

We have carefully considered this case from every point of view presented and have deliberately come to the conclusion that there is no liability on the part of this defendant arising out of this unfortunate accident.

The judgment of the lower court is erroneous and will have to be reversed.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, set aside, avoided, and reversed, and it is now further ordered, adjudged, and decreed that there be judgment in favor of the defendant W. Lawrence Bates and against the plaintiff, William John Pigott, administrator of the estate of Edwin Pigott, rejecting the demand herein made and dismissing his suit.