## GREAT SOUTHERN LUMBER CO. v. BATES.

### No. 1311.

Court of Appeal of Louisiana. First Circuit. March 6, 1934.

Hugh M. Wilkinson and A. Miles Coe, both of New Orleans, for appellant.

Ott & Johnson, of Franklinton, for appellee.

LE BLANC, Judge.

This suit is brought to recover the sum of $264.70 for account of the Elizabeth Sullivan Memorial Hospital, which is owned and operated by the Great Southern Lumber Company, for hospital, medical, and nursing services rendered to a young boy named Edwin Pigott on the alleged authority and direction of the defendant, W. L. Bates.

The young Pigott boy was run over by a truck belonging to the defendant, Bates, on July 21, 1931, and suffered a severe cranial injury. The accident formed the basis of a damage suit against Bates which was finally decided in the latter's favor. See Pigott v. Bates (La. App.) 143 So. 535. Immediately following the accident, he was rushed to the hospital and given necessary hospital, surgical, and nursing attention, the whole of said services being valued at the sum of $264.70, and the question involved in this case is whether or not such services were authorized by the defendant in such manner as to hold him liable therefor.

The defense is a denial of the authorization alleged by the plaintiff, and it is further urged that, if it be claimed that defendant agreed to pay for the services in case the boy's father, who was responsible, did not pay them, such agreement was in the nature of a promise to pay the debt of a third person, and he cannot be held thereunder, as the same was not reduced to writing. It does not appear from the plaintiff's petition, nor does the testimony show, that there was any agreement made by Bates to pay the plaintiff's bill in the event it was not paid by those directly responsible for it, and it is therefore unnecessary to consider the defense that is made under one of the provisions of the statute of frauds, which under our law is embodied in article 2278 R. C. C. The only issue, therefore, is whether or not the services were authorized by the defendant. The district judge held that they were, and he accordingly rendered judgment against him. The appeal is taken from that judgment.

■ Mrs. E. R. Summerall, who at the time the boy was entered was Miss Moore, was superintendent of the hospital. She testifies that it was her duty, among others, when patients were received, to make financial arrangements with the person who was to be responsible for the bill, and that, with regard to the Pigott case, Mr. Bates came in and said that "he would authorize the treatment and to go ahead with anything that was necessary." She is not positive if that was the day the boy was admitted or the following day. She knew Mr. Bates, considered him financially responsible, and was satisfied with the arrangements. The defendant admits that he called at the hospital the day of the accident, and, when put the direct question if Miss Moore asked him about the payment of the bill or his being responsible for the boy's admittance, he answered, "No sir, not exactly." That is not an unqualified denial, although on further interrogation he explains that he told her that he carried liability insurance on the truck which had run over the boy, and that he was sure the insurance company would do what was right. It is significant to note, in connection with Mrs. Summerall's testimony, that the account was at once opened in the name of W. L. Bates. It seems hardly probable that this would have been done without some good reason, and what better reason could there be than that Mrs. Summerall felt satisfied with the authority she had obtained from the defendant.

The testimony of Mrs. Summerall finds rather convincing corroboration in that of Mr. W. J. Willoughby, assistant treasurer of the plaintiff company. He says that the first time he called on Mr. Bates to collect the hospital bill he mentioned what Miss Moore had stated to him as to responsibility for this bill, and that he then asked Mr. Bates if he had authorized it, and he stated that he had. A few days after this, Mr. Willoughby asked him to give him a written statement in line with the authorization he had given the hospital, and this Mr. Bates refused. The latter denies that he ever admitted in the first instance to Mr. Willoughby, the same as he had denied that he told Miss Moore that he authorized the charges, but as found by the district judge, if there was any conflict between his testimony and that of Mrs. Summerall, that of Mr. Willoughby produced the preponderance which was necessary to support a judgment in favor of the plaintiff.

■ On November 14, 1932, plaintiff, through Mr. Willoughby, addressed a letter to the defendant, again requesting payment of the bill. In that letter Mr. Willoughby recalls his conversations with him, and states in particular: " * * * And a few days later when the writer called on you asking that you give him a written statement in line with instructions you had given the hospital, that you refused to do this." Counsel for defendant would have us construe that letter, as well as Mr. Willoughby's first request for a written statement in the conversation between them, as an implied acknowledgment that plaintiff always considered the debt as that of a third party, and was endeavoring to have Mr. Bates comply with the requirements of the statute of frauds by executing a written acknowledgment so as to bind him for it. But we do not so regard these requests from Mr. Willoughby, as he seems to have made it plain that what he asked for was a written statement that Mr. Bates authorized the services to Mrs. Summerall, which we take to mean that he would primarily be responsible for them whether they were paid by some one else or not.

We certainly can find no manifest error in the judgment appealed from, and it is affirmed.