### EUNICE CLINIC & HOSPITAL, Inc., v. BALDWIN et al.

### No. 1600.

Court of Appeal of Louisiana. First Circuit.

May 8, 1936.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellants.

Isom J. Guillory, of Eunice, for appellee.

DORE, Judge.

This is an action to recover the sum of $415 for surgical, medical, and hospital services rendered by plaintiff to a boy fifteen or sixteen years old, Vorise Lafleur, who was seriously injured on January 5, 1934, while attempting to board a train at Eunice of the New Orleans, Texas & Mexico Railway Company, operated by the defendants as trustees. The railroad company, through these trustees, denies that it is liable for these services rendered this boy, and denies that any promises to pay for the services were ever made by the railroad, but if such promises were made to pay for the services, these promises were not made by any representatives of the railroad having authority to make such promises.

The evidence shows that immediately after the accident happened the local agent of the railroad company, at Eunice, a Mr. D. E. Young, and the telegraph operator, a Mr. Brupbacher, secured an ambulance and had the boy sent to the plaintiff hospital. The agent, Young, also telephoned to the hospital for a doctor and Dr. Jenkins, the president of plaintiff hospital, came to the scene and rendered first aid to the boy.

On account of the serious nature of the injury, it was decided that an emergency operation was necessary to save the life of the boy. Dr. Jenkins assisted by two other hospital doctors amputated the boy's leg on the same day of the accident.

On the following day, Mr. McDonough, the claim agent of the railroad company, and whose duty it is to investigate accidents of this kind for the railroad company, came to the hospital to see the boy in his investigation of the case. The superintendent of the railroad company had telegraphed

him, the claim agent, on the day of the accident, and Mr. McDonough had come to Eunice on the night train.

■ According to the testimony of Dr. Jenkins, Mr. McDonough went in and talked to the boy, and after he came out of the boy's room, Dr. Jenkins asked Mr. McDonough who would be responsible for the bill, whereupon Mr. McDonough replied, "We will take care of the expenses of this case." Mr. McDonough denies making this statement, but the trial judge must have believed that he had made it; and other facts and circumstances in the record indicate that he did make such a statement. There can be no serious question of the authority of Mr. McDonough to bind the railroad company, as he was invested with full authority to handle accident cases of this kind. In fact, he was present at the trial and was aiding the counsel of defendant in the trial of the case.

Several times after this first conversation about the boy, Mr. McDonough inquired as to the condition of the boy; at one time making the further statement that the bill must be getting pretty high, and suggested that the hospital make out a bill and send it to the claim department in Houston, and that he would be down there and take care of it. A bill was sent as suggested, and on March 31, 1934, a letter was received from Mr. McDonough declining liability for the bill in the following words and phrases: "I have referred the bills sent me to the Claims Committee, but in as much as it is the intention of the Company to decline any payment to the injured boy, or his parents, it is felt that it would be unwise to make any other payments." The company had previously paid the ambulance charges. The only reason which can be deduced in declining the payment of this bill was the fear of a claim against the company on behalf of the boy or his parents, and not a refusal on account of not having incurred the charges. The boy had been in the hospital from January 5 to March 31, 1934, and the suit is to recover for services rendered during that period.

■ Defendant objected to the introduction of evidence tending to show a promise on the part of the railroad company to pay the bill on the ground that it was an effort to prove by parol testimony a promise to pay the debt of a third person—the debt being that of the boy's parents—contrary to article 2278 of the Civil Code. However, such is not the case here, as it is not a collateral and conditional promise on the part of the railroad company to pay the debt of Lafleur's parents that is sought to be proved by parol, but a primary and direct obligation incurred by the railroad company through the promise of a duly authorized representative. If the railroad company, through an authorized representative, agreed to pay for the services, there is no question of a promise to pay the debt of a third person at issue in the case. If the company did not make such an agreement, there is no liability on its part.

■ It is contended that as the local agent, Young, had no authority to bind the company, his acts in having the boy taken to the hospital and asking the hospital to take care of him did not authorize the operation and incurring of the expenses connected therewith; and hence, if Mr. McDonough did, on the next day, promise to pay the bill, most of the expenses were then already incurred; and being the obligation of the boy's parents, such promise was to pay the debt of the parents, and therefore not susceptible of proof by parole. While the acts and promises of the local agent in bringing the boy to the hospital and asking that he be taken care of might not in itself be sufficient to bind the company, yet his acts were ratified by the payment of the ambulance bill incurred in bringing the boy to the hospital and by the subsequent promise by McDonough to pay the bill, thereby ratifying the acts of Young in so far as he had been connected with the case.

There is no similarity between this case and those cited by counsel for defendant where a person present at an accident calls for medical assistance for one seriously injured without any promise or agreement by the person so making the call to pay for the services, and where the person so making the call sustains to the injured person no legal duty to render assistance. In such a case the person is acting the part of the good Samaritan, and no legal obligation is incurred.

In the present case, however, the plaintiff has proven an agreement to pay for the services. The fact that the Lafleur boy was hurt while attempting to catch a train, even though no legal liability for damages may have been incurred by the railroad company thereby, nevertheless the accident made a claim for damages possible, and

the railroad company had an interest in minimizing the damage had the facts developed a liability. At least the company was not in the same position as a disinterested stranger would have been to the boy.

Among the cases from the courts of this state presenting very similar circumstances where a recovery was allowed for such services are the following: O'Ferrall **v.** Nashville Bridge Co., 165 La. 963, 116 So. 399, and Great Southern Lumber Co. v. Bates (La.App.) 153 So. 332.

For these reasons, the judgment herein appealed from is affirmed at the costs of defendants in both courts.