No. 3673

Second Circuit

———

## BUCKNER v. POWERS

———

(January 31, 1930.   Opinion and Decree.)
(March 24, 1930.   Rehearing 'Refused.)

———

Hawthorn & Stafford and John L. Pitts, of Alexandria, attorneys for plaintiff, appellee.

Overton & Hunter and Dawkins & Roberts, of Alexandria, attorneys for defendant, appellant.

ODOM, J.   Plaintiff brings this suit to recover the damage done to his automobile when it collided with the car belonging to defendant on a street intersection in the city of Alexandria.   He alleges that he was free from negligence in the operation of his car, and charges that defend-

ant's son, who was driving the other car, was guilty of gross negligence in that he was driving at an excessive rate of speed, and that he left his own side of the street and veered to the left, when he should have swerved to the right. Defendant denied negligence on the part of his son, and pleaded contributory negligence on the part of plaintiff in bar of his recovery. The lower court found for plaintiff and rendered judgment in his favor for $501.01, from which judgment defendant appealed.

There are only questions of fact involved, and, while we disturb judgments of lower courts based solely on questions of fact with some reluctancy, yet we find it necessary to do so in this case, as the lower judge, we think, manifestly erred. A careful consideration of the whole case has convinced us that even if it be conceded, as counsel for plaintiff contend, that defendant's driver was negligent, plaintiff's right to recover is barred by his own contributory negligence.

The collision took place at the intersection of Murray and Sixteenth streets in the city of Alexandria, at 10:30 p. m. Each of these streets is 32 feet wide from curb to curb. Murray is a right of way street, under an ordinance of the city, and is graveled. Sixteenth street has been graded, but not graveled, is rough, and crosses Murray street at right angles. On the night of the accident, plaintiff was driving along Sixteenth street towards Murray. He alleged that, at about the time his car arrived at the intersection, he slackened its speed, so that when he entered the intersection he was traveling about 5 miles an hour; that "just before he entered said street" he looked both to the right and to the left, and saw the car approaching from the left which proved to be the one driven by Werner Powers, son of defendant; that "just before" he got to the intersection, and slowed down, the defendant's car was about 450 to 500 feet away; "that at the moment that petitioner's car entered the intersection it (defendant's car) was perhaps 350 feet away; that the said Werner Powers (driver of defendant's car) was driving along Murray street at a very rapid rate of speed, estimated by petitioner at between 45 and 50 miles per hour; * * * that, seeing the car some distance away, petitioner felt that he had ample time to cross Murray street, and to reach the far or right side of the said street long before the Powers car arrived at Sixteenth street; shows that he entered and was more than half way across the intersection of the two streets when, due to the negligence and carelessness of the said Werner Powers, his car was struck and damaged by the auto driven by the said Powers; * * * that after his car had entered the intersection of Sixteenth and Murray streets, and when the Powers car was only a few yards away, the driver of the Powers car suddenly veered his car to the left, entirely leaving his own right side of the street; that petitioner saw said car veering to the left, but, due to the speed of the approaching car and its nearness, it was impossible for petitioner to get out of its path."

Plaintiff's testimony, which is corroborated by that of Miss Cox, a young lady who was riding on the seat with him, is in substantial accord with the above-quoted allegations of the petition. These allegations and the testimony show that plaintiff entered the intersection when he saw the other car bearing down upon him from the left at what he considered a rapid rate of speed, and the testimony as a whole, taken in connection with the physical facts, shows that he entered the street at a time when the other car was

so close upon him that he could not get out of its way.

If the driver of defendant's car was exceeding the speed limit on Murray street, as fixed by ordinance, as contended by plaintiff, he was guilty of negligence as a matter of law; but conceding that he was negligent in that respect, it does not necessarily follow that plaintiff may recover, because, if plaintiff was also negligent and his negligence was the contributing, proximate, and not the remote, cause from which the injury arose, he cannot recover.

The negligence rule generally is stated in 28 Cyc. p. 38, under the heading "Motor Vehicles," as follows:

"The act or omission alleged to be negligent must always be the proximate cause of the injury in order to be actionable; and so, too, must the alleged contributory negligence be, in order to bar recovery, such that the injury would not have been sustained except for such negligence."

Conceding, as contended by plaintiff, that defendant's driver was guilty of actionable negligence, we hold that plaintiff's right to recover is barred by his own contributory negligence, which was the prime cause of the accident. The city traffic ordinance makes Murray a right of way street and contains the general provision that "it shall be the duty of the driver or person in charge of any vehicle using the streets of Alexandria, Louisiana, which do not have the right of way, as hereinabove set forth, upon approaching intersections of streets, to stop if necessary in order to avoid collisions with vehicles using streets which have the right of way. Drivers of vehicles, before stopping, turning, slowing down or changing the course, shall ascertain that such movement can be made in safety and shall make known their intention by signaling with the hand."

Plaintiff testified that he knew Murray was a right of way street and that he was reasonably familiar with the traffic laws of the city, as he had lived there for a number of years and was accustomed to driving a car. He did not stop, he says, when he reached Murray street, because he felt that he had time to cross before the other reached the intersection. That he was mistaken, is demonstrated; the cars collided in the intersection.

The testimony as a whole and the physical facts show that defendant's car was almost to the intersection when plaintiff entered. He alleged and testified that, just before he reached Murray street, defendant's car was about 450 to 500 feet away, and that, at the moment his car entered the intersection, the other car was perhaps 350 feet away. These figures are estimates only, and that they are far from correct is shown by the physical fact that the collision took place in the intersection. If defendant's car had been as far away from the intersection as plaintiff says it was when he entered, there would have been no collision, because plaintiff could have crossed the street and gotten out of the way. Plaintiff testified that he entered the intersection, going possibly 5 or 6 miles an hour, and that he accelerated his rate of speed when he saw defendant's car nearing him, and that he had passed the center of the intersection and lacked only about 5 or 6 feet of being across Murray when the cars collided. Taking plaintiff's estimate as correct, defendant's car traveled 350 feet while plaintiff's was traveling only about 24 feet, so that, from the moment plaintiff entered the intersection to the moment of the collision, defendant's car traveled more than 14 times as far as plaintiff's. If plaintiff's car was going across at an average rate

of speed of 7 miles an hour, and that is a fair estimate according to his testimony, he was going approximately 10 feet per second and it took him 2½ seconds to cross. Then, in 2½ seconds, defendant's car, in order to reach plaintiff, had to run 350 feet, or 140 miles an hour, which, of course, is impossible.

Plaintiff in his testimony changed his figures somewhat, and said that, when he got to the intersection, defendant's car was 350 feet down the street, and that when he got into the intersection the car was 150 feet away. These figures are also irreconcilable with the fact that the collision took place in the intersection as it did. If defendant's car was 150 feet down the street when plaintiff's car was well within the intersection and moving at 6 or 7 miles an hour, it could not have reached the intersection and struck plaintiff as it did without running at a rate of speed of more than 100 miles an hour. In view of the fact that the collision took place in the intersection, before plaintiff got across, makes the conclusion inescapable that he entered the intersection when defendant's car was almost upon him.

Defendant's son, who was driving the car, testified that he was proceeding along Murray street at a speed of 15 to 20 miles an hour; that he saw plaintiff's car approaching Murray from Sixteenth street when he was about 50 or 60 feet from the intersection, but did not know or anticipate at the time that plaintiff would enter the crossing without stopping, and, knowing that he had the right of way, he assumed that plaintiff would stop before entering the crossing, and that he took no precautions until he saw plaintiff's car going into the intersection; that he did not know that plaintiff would enter the crossing until his own car was almost to it; that he then reduced his speed and applied his brakes, which worked perfectly, but that it was then too late to avert the collision, as the two cars were almost together. He says further that he was so close to plaintiff's car when he saw that it was coming into the intersection that he swerved to the left in order to go in front of it, as that seemed at the time to be the proper move, but that he realized later that, if he had swerved to the right instead of to the left, there probably would have been no collision, although, if he had gone straight ahead, the two cars would have collided about the center of the intersection. This testimony accords more nearly with the physical facts than does the testimony of plaintiff.

The situation presented by the record as a whole is this: Plaintiff knew that Murray was a right of way street; he saw defendant's car coming down that street from his left when he was 30 feet from the intersection and slowed down from 15 to 5 miles an hour; that he saw it when he got to the street, but did not stop. It was night, and plaintiff says that he could not estimate the speed of defendant's car for that reason, and for the further reason that it was approaching from an angle. Under these circumstances, he should have been doubly careful. He knew that it was his duty under the ordinance to yield to defendant's car its superior right, and to stop, if necessary. Instead of heeding the plain provision of the traffic ordinance and the ordinary rule of safety, plaintiff entered this main right of way highway from an intersecting street, when he saw another car bearing down upon him. He was, we think, guilty of the grossest kind of negligence.

Defendant's car being on a right of way

street under the municipal ordinance, and therefore having a superior right at the crossing, the driver of it had the right to assume that plaintiff not only knew the law, but would observe it, yield the right of way and take the necessary precautions for his safety. It was not negligence for defendant's driver to fail to anticipate plaintiff's negligence in driving into the intersection without taking the precautions required by the traffic ordinance and dictated by the ordinary rules of safety. It is argued, and true, we think, that if defendant's driver had applied his brakes when he first saw plaintiff's car approaching the intersection, he could have stopped, or at least so slackened its speed as to avoid the collision; but, when he first saw plaintiff approaching, he assumed, and had the right to assume, that plaintiff would observe the traffic regulations of the city. Not only that, but the indications were that plaintiff intended to stop. Plaintiff himself says that he was running about 15 miles an hour, and that, as he approached the crossing, he slackened his speed, so that, when he reached the edge of Murray, he was going not more than 5 or 6 miles an hour. Under these circumstances, it was not the duty of defendant's driver to stop and wait to see if plaintiff intended to stop. But it was his duty, of course, to do all that was reasonably possible for him to do to stop and avert the collision, when and after he saw that plaintiff was not going to stop. This we think he did.

The fact that cars on certain streets are given the right of way under municipal traffic regulations does not absolve the drivers of such cars from all care; but the duty of using due care to avoid injuring those who approach intersections from less-favored streets still rests upon him, even though his right is superior. But,

in arriving at a correct conclusion as to whether he used due care, a consideration of his superior right is an important factor. If by ordinance he has a superior right at the intersection, the degree of care required of him in approaching the crossing is less than it would be if he had no such right. On the other hand, the duty of one approaching a right of way street from one less favored is correspondingly greater because of his inferior right.

The rule is thus stated by Blashfield in his Cyclopedia of Automobile Law (1927), vol. 1, p. 499, sec. 25:

"The fact that one traveler is given the right of way over another, either because of the relative position in which they approach the intersection or because traffic in one direction is given preference over that going in a different direction, affects the question of care to be exercised by the latter. The priority of right of one driver imposes a corresponding duty on the driver having the inferior right of way to exercise a degree of care commensurate with the superior right of the other to observe the car of the other, its speed, position and operation, and to wait until it has passed before attempting to cross the intersection. * * *

"A driver not having the right of way, who sees a car approaching at a negligent rate of speed, cannot assume that it will slow down at the crossing and attempt to cross first on such assumption; and a motorist who at night approaches a street, traffic on which is given the right of way, without sounding his horn, and collides with a car on such favored street, which is traveling at a reasonable speed, showing side lights, is guilty of negligence as matter of law."

This rule has been consistently adhered to by this court. McCalmont vs. Sterkx, 5 La. App. 730; General Exchange Insurance Corporation vs. Morrow, 9 La. App. 487, 121 So. 304; De La Vergne vs. Levy, 10 La. App. 768, 123 So. 182; Hubert vs. Robichaux, 8 La. App. 789. See, also, Berry on Automobiles (6th Ed.), vol. 1, sec. 1056.

Counsel for plaintiff in their brief say:

"Counsel contends that under the doctrine of McCalmont v. Sterkx, 5 La. App. 730, Smith v. Interurban Transportation Co., 5 La. App. 704, etc., the driver of a car coming into a main highway must first ascertain that he can cross it in safety before he enters it. We concede that this is the law and it is good law. We advanced it in the Smith case, in which we successfully made the defense now tendered. The rule contended for is not pertinent here, for we believe that we can show that the Buckner car had entered, and was well into the intersection some few seconds before the Powers car, and had crossed over into the other side of the street where it belonged, and where the Powers car did not belong. In the instant case Powers was driving at an excessive rate of speed, and really lost control of his car, an element lacking in the Smith case."

Counsel then proceeded with the argument that defendant's driver lost control of his car and swerved to the left, when he should have gone straight ahead or veered to the right. It is probably true, as already stated, that defendant's driver made a mistake in turning to the left, instead of the right; but his mistake in that respect cannot be charged against him as negligence. He was confronted with a sudden emergency. Plaintiff's car came into the street immediately in front of him. He acted quickly and under impulse. One in peril, or who sees another in peril, when immediate action is necessary to avoid it, cannot exercise the same presence of mind and cool deliberation as under other circumstances. In a case note found in 27 A. L. R., page 1197, it is stated:

"The well-settled rule, stated in the earlier annotation, that an automobile driver, who by the negligence of another, and not by his own negligence, is suddenly confronted by an emergency and is compelled to act instantly to avoid a collision or injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice, is supported by the following recent cases."

Following this statement, there are cases cited from 18 states, as well as from Federal courts. It was not defendant's negligence which brought about the emergency, but the negligence of plaintiff.

For the reasons assigned, it is ordered and decreed that the judgment appealed from be reversed; that plaintiff's demands be rejected and his suit dismissed, at his cost in both courts.