## TAYLOR v. BYRNES.[*]
### No. 1250.

Court of Appeal of Louisiana. First Circuit. Dec. 4, 1933.

C. C. Bird and Daspit & Huckabay, all of Baton Rouge, for appellant.

Laycock & Moyse, of Baton Rouge, for appellee.

MOUTON, Judge.

On the 28th of June, 1929, a collision occurred at the intersection of Convention and Dufroq streets between two autos, one driven by B. R. Carney and the other by Thomas C. Byrnes, defendant, in which Luke E. Taylor, Sr., husband of Mrs. Melvina Dedon Taylor, was severely injured, resulting in his death a day or two thereafter.

In November, 1929, in the capacity in which she now sues in this case, plaintiff brought suit for herself and her minor son, claiming damages for the death of her husband against B. R. Carney, owner of the auto, and Mildred Davis who was driving it at the time of the collision.

A compromise was subsequently effected between Mrs. Taylor, for herself and her minor son, by which B. R. Carney and Mildred Davis were released from all liability on account of the collision.

In the petition of plaintiff in that case, it was alleged that T. C. Byrnes, defendant herein, driver of one of the autos in the collision, as he approached from the east of the intersection formed by Convention and Dufroq streets looked, both ways, north and south, before entering the intersection, seeing only one vehicle about 300 feet away which was approaching from the north and going due south on Dufroq street, started across said Dufroq street, proceeding due west to cross the intersection.

In her petition in that case, plaintiff averred that, if it were held that the collision was due to the fault or negligence of T. C. Byrnes, in that event petitioner made special reservation of her right to claim damages against T. C. Byrnes in separate proceedings. Even if such reservation had not been made, these allegations could not give rise to any estoppel, as was held in Farley v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122, L. R. A. 1915A, 200, Ann. Cas. 1915C, 717. Although this be true, such allegations, as was said in that decision, "carry some weight, of course, as evidence," etc., and will be so considered in this cause, between plaintiff and Thomas C. Byrnes.

Here, this suit is brought in damages by plaintiff for herself and minor child against Byrnes, who at the time of the collision was driving the car in which her deceased husband was riding as a guest.

*Rehearing denied January 22, 1934. Writ of certiorari denied February 26, 1934.

The only eyewitnesses who testified to the collision were Byrnes and Anderson, who was on the front seat of the auto with Byrnes at the time; Carney and Mildred Davis, the occupants of the other car, not being called as witnesses.

Dufroq, a right of way street, runs north and south through the city of Baton Rouge; Convention street runs east and west. There is a cemetery wall along the northern line of Convention street which, according to the testimony of Hanks, witness for plaintiff, is located 11 feet 10 inches, from the curbing on the eastern line of Dufroq street. In connection with that statement, Hanks says: "When the front bumper of an auto reaches eleven feet, ten inches from the east side of Dufroq Street, you can see at least to Bogan's house." It is also shown by this witness, that the distance from the north line of Convention street to the north line of the property of Bogan is 233 feet.

It was shown that immediately upon passing the western line of that wall the driver of an auto can see beyond the northern line of the Bogan property, therefore, at a distance of more than 233 feet looking in a northerly direction.

The proof is that just before the accident Byrnes, defendant, was driving along that wall on Convention street going west towards the intersection of Dufroq and Convention streets where the accident happened.

Byrnes testifies that when he passed the wall and when about 10 or 15 feet from the intersection, he looked to his right northward and to the south along Dufroq street and saw the car Carney was driving, which he "judged" was then about 30 or 50 feet north of Bogan's house on Dufroq street; and it was, according to his testimony, and which is not contradicted, then the only car approaching the intersection on that street.

According to the testimony of Hanks, the distance from the north line of Convention street to the north line of the Bogan property is 233 feet.

It may be that the house is not located on the northern line of that property and that it is situated several feet south of that line. Hence, when defendant first saw the auto Carney was driving, and says he judged it was then 30 or 50 feet north of Bogan's house, it may then have been, though beyond the house, but not still near or on the north line of the Bogan property, and about 233 feet from the north line of Convention street.

In plaintiff's petition in the case she filed against Carney, as hereinabove pointed out, she alleged that before defendant herein entered the intersection he saw the Carney car then about 300 feet away, which was approaching from the north and going due south on Dufroq street. This allegation, as is stated in the petition, was made on information and belief, though not correct as to distance as shown on the trial of this case, shows, however, that defendant herein had seen the Carney car at a considerable distance before he started across the intersection. It was also alleged by plaintiff in her suit against Carney, and in connection with her averment as to the 300-foot distance of the Carney car to the north line of Convention street, that defendant herein looked both ways, north and south, before entering the intersection.

In that respect, this allegation of fact, with the exception of the distance stated, is in perfect harmony with the evidence given by defendant on this trial. As it is shown that defendant slowed down the speed of his car before entering the intersection and after looking in all directions, it is clear that he exercised the usual precautionary measures under the circumstances and the ordinary care, which under the law he owed to his guest, Mr. Luke E. Taylor, Sr., who lost his life in the collision.

It is true, defendant, Byrnes, did not stop his car before entering the intersection, but there was no such requirement under ordinance of the city of Baton Rouge regulating traffic; hence defendant was not guilty of even a technical violation of any municipal regulation in not stopping his auto before starting across.

The proof shows that defendant, when he entered the intersection, was going at about 18 or 20 miles an hour, and that his car was struck when its rear wheels were on or near the west rail of a railroad track in Dufroq street. As this street is 32 feet in width, defendant had gone about 16 or 17 feet on that street when his auto was struck.

The contention of attorneys for plaintiff is that, as the Carney car ran into the intersection before defendant had cleared Convention street going at the rate he was traveling, the inescapable conclusion of fact is that Carney was driving on Dufroq street at a tremendous rate of speed—like a thunderbolt, as his speed is referred to by plaintiff's counsel in their brief. As such was the speed at which Carney must have been traveling, according to plaintiff, counsel claim that defendant, when he saw the Carney car coming from the Bogan property towards Convention street, should have perceived the excessive speed at which that car was moving and should have stopped his car before entering the intersection, or upon entering should have speeded forward across Convention street and could in that way have cleared the intersection for the safe passage of the other car.

The evidence shows that the accident occurred at night, a little after 1 in the morning, that it had been raining a while before,

and that it was "a little cloudy," as testified to by defendant, and of which there is no contradiction. It is shown, as hereinabove explained, that, after defendant had passed beyond the cemetery wall, he saw the Carney car then at a distance from him of about 230 or 250 feet coming down Dufroq street towards Convention street. If the Carney car had been coming directly towards defendant even in the daytime, it would have been impossible, as held in many decisions rendered by the courts in this state, for defendant to have been able to make an accurate estimate of the speed at which Carney was traveling. We do not believe that at night any one would contend that such an estimate could be made with approximate correctness. In this case, the Carney car, it is true, was not coming directly towards defendant, but was advancing towards Convention street on which defendant was traveling, a little from the northwest, and therefore diagonally. In daytime it might have been possible to notice with some degree of accuracy that Carney was moving at an excessive rate of speed, but at night, with a cloudy sky, it is simply impossible to hold that defendant should have noticed or observed that Carney was going at a reckless speed from the point where he first saw it on the north side of the Bogan house.

■ As it also appears that there is a signboard on the northwest corner of Convention and Dufroq streets, a house next thereto, another house north of that house, and then the Bogan home, which evidently had the effect of obscuring the vision of defendant as to the movement of the Carney car, he must not be charged with negligence because he stated that he could not tell at what speed that auto was going. Independently of the effect on his vision that might have resulted from the intervening signboard and the houses referred to, we hold that it cannot be logically held that defendant, from the position he occupied when he passed the cemetery wall, could have seen that the Carney car was traveling at an excessive rate of speed. After seeing that car he had the right to assume that it would proceed at a legal rate of speed as it has been held in a number of decisions, and which is a rule that has been applied in many instances to a car traveling on a right of way street. No doubt, the driver on a right of way street has a superior right at an intersection and the degree of care required of him in approaching the crossing is less than it would be if he had no such right, but this right of way given under municipal ordinances does not absolve such cars from all care, as was well said in the case of Buckner v. Powers, 12 La. App. 630, 125 So. 744, and cited with confidence by counsel for plaintiff.

This ruling clearly indicates that the drivers on these right of way streets must travel at normal speed, and, such being what is expected of them, a driver on a less-favored street has the right to assume that such drivers will respect the speed laws or ordinances.

■ It follows from the foregoing reference to the rule of law governing in such instances that the defendant herein, after having seen the other car as he passed beyond the wall, had the right to assume that it would come down Dufroq street towards the intersection at a legitimate rate of speed. As defendant, when he saw the Carney car was at about 42 feet from the west line of the intersection, he could, as a reasonable, cautious, and prudent person, believe that he could drive over the intersection before the other car coming on Dufroq street could reach the crossing. In attempting to cross under such circumstances, the driver of a car is not guilty of negligence. This is held to be the rule of law in many decisions referred to in the case of Hamilton v. Lee (La. App.) 144 So. 249. Of course, after entering the intersection under such circumstances, the driver of an auto must proceed across with proper care.

Counsel for plaintiff say that, when Byrnes entered Dufroq street, he nonchalantly idled across the street, probably conversing with his companions. Byrnes when he approached Dufroq street, as the proof shows, slowed down to about 18 or 20 miles an hour, and says he proceeded towards the crossing "without changing gears, decided to cross, then put his foot on the gas and speeded up the car." He further says that, when he went across, "I put my foot on the accelerator as there is a little grade there and went on across," and there is no contradiction of that statement in the record. It is therefore apparent that Byrnes did not go nonchalantly across the intersection.

■ Byrnes testifies that, after he entered the intersection, he looked ahead of his car. As the Carney car was at a distance of over 200 feet when he entered the crossing and as there was no car or vehicle coming northward toward the intersection on Dufroq street, we cannot see why Byrnes could be held at fault because he looked ahead of his car when negotiating the crossing.

Having looked both ways, north and south, before entering the intersection, with no apparent danger from either direction, we fail to apprehend why Byrnes should be held negligent because he looked ahead of his car. We think, under the circumstances, it was the proper thing for him to do, and that he was not at fault because of the course he pursued.

Counsel for plaintiff insist on the proposition that he was negligent because he did not keep a constant look to his right on the Carney car as he was crossing the intersection.

In the case of Hamilton v. Lee (La. App.) 144 So. 249, 253, among the many authorities referred to in that decision, reference is made to where it was said, speaking of the require-

ment expected of a driver to look at an oncoming car that, quoting: "She would be justified in giving her attention to the other direction in which she must look, that is, to her left and in front of her." This, we think, is a sound rule and exonerates Byrnes from the charge of negligence because in going over the crossing he looked in the direction he was traveling.

Counsel for plaintiff point with great confidence to the case of Buckner v. Powers, 12 La. App. 630, 125 So. 744, 745, in which Mr. Justice Odom, now a distinguished member of the Supreme Court, was the organ. It is true in the cited case that the court found that, when plaintiff's car entered the intersection, defendant's car was perhaps 350 feet away. The court so stated, but in another part of the decision, which must have escaped attention of learned counsel, the court said: "These allegations and the testimony show that plaintiff entered the intersection when he saw the other car bearing down upon him from the left at what he considered a rapid rate of speed, and the testimony as a whole, taken in connection with the physical facts, shows that he entered the street at a time when the other car was so close upon him that he could not get out of its way."

There is no proof in this record indicating that defendant saw the other car bearing down upon him at what he considered a rapid rate of speed. To the contrary, the evidence shows that defendant did not see the car coming upon him, and it nowhere appears that he considered it was going at a rapid rate of speed. In the quotation from that decision, the court said: "The testimony as a whole, taken in connection with the physical facts," shows, that plaintiff had entered the intersection when the other car was so close upon him that he could not "get out of its way."

In this case, the testimony as a whole fails entirely to show that defendant entered the crossing when the car was so near to it that he could not get out of its way. No one testified how near the Carney car was to the intersection when defendant started across.

The record is barren of any testimonial proof of that character. The only way in which the conclusion could be inferred that the Carney car was that close to the intersection when defendant entered it would be to deduce from the contentions of counsel for plaintiff to the effect that the Carney car was coming like a thunderbolt and that defendant nonchalantly idled his way across the intersection.

In order that we might reach such a conclusion, the solution of the case would have to depend altogether on the physical facts to which we have referred, and the testimony, instead of being considered, as was done in the Buckner Case, would have to be totally discarded. The testimonial proof in this case fails to sustain the contention of counsel on this issue and likewise the physical facts to which we have referred, as there is no evidence that Carney was traveling like a thunderbolt or with the velocity of the wind or that defendant was idling his way while going over the crossing. On the contrary, the only proof on this subject is that defendant placed his foot on the accelerator while crossing and speeded up his auto. In some instances, the inexorable logic of the physical facts, independently of testimonial proof, will have the effect of establishing the demand of the complainant with legal certainty thus entitling the litigant to recover. Here there is no such proof to be inferred from the facts of the case or that the proof to be drawn from the physical facts should prevail over the testimonial evidence which shows that there is no foundation to support the contentions which plaintiff relies upon.

Plaintiff has completely failed to show that, at the time of the accident, defendant was at fault or guilty of imprudence or negligence towards his invitee or guest, deceased husband of plaintiff. The proof shows that defendant was certainly exercising ordinary care and that plaintiff and her minor child have no right to recover, as was held below. Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L. R. A. 1917F, 253; Banta v. Moresi, 9 La. App. 636, 119 So. 900.

Judgment affirmed.