## GEDDES & MOSS UNDERTAKING & EM-BALMING CO., Limited, v. DUNNE et al. *

### No. 15066.

Court of Appeal of Louisiana. Orleans.

May 13, 1935.

P. M. Milner, of New Orleans, for appellants.

John T. Charbonnet, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit for damages brought by the Geddes & Moss Undertaking & Embalming Company, Limited, against Thomas Dunne and his insurance carrier, the Maryland Casualty Company, in which the sum of $976.41 is claimed. $906.41 of that amount is alleged to be due as the cost of repairs to the ambulance belonging to plaintiff, and $70 as the cost of the hire of another ambulance during the time the plaintiff's car was being repaired. The damages claimed are alleged to have resulted from the negligent operation of a Buick automobile belonging to and driven by Thomas Dunne, when it collided with the plaintiff's ambulance on the afternoon of March 30, 1933, in the intersection of Prytania and Felicity streets. The defendants denied all charges of negligence imputed to Thomas Dunne, and averred that the accident was due solely to the negligence of the driver of plaintiff's ambulance, and in the alternative pleaded contributory negligence.

There was judgment below in plaintiff's favor, as prayed for, and defendant has appealed.

The case has been ably presented and elaborately briefed and the voluminous record attests the industry of counsel. Sketches and photographs of the scene of the accident are in evidence. Prytania street is one of the main thoroughfares in the city of New Orleans, and, in the vicinity of the accident, is intersected by Urania and Felicity streets, which form two converging sides of a triangle which meet at St. Charles avenue, about 400 feet distant. Both intersections, that of Urania and Prytania streets and that of Felicity and Prytania streets, because of their proximity, are guarded by one set of signal lights. One of these lights is on the lower, or Canal street, side of Urania street, and the other on the upper, or Jackson avenue, side of Felicity street. The lights are about 60 feet apart, and are synchronized so that when the green or "go" signal, permitting traffic to cross the Felicity intersection, ap-

*Rehearing granted May 27, 1935.

pears, a similar signal is exposed to traffic approaching the intersection of Urania and Prytania streets from the opposite direction, and vice versa. The distance between the two roadways at the point where they intersect Prytania street is 31 feet 1 inch.

The plaintiff's ambulance, having picked up an injured negro on the water front, was proceeding out Felicity street and across Prytania from the direction of the Mississippi river toward Lake Pontchartrain, on its way to the Flint-Goodridge Hospital. The defendant's Buick automobile was traveling up Prytania street, having first to cross the Urania intersection before it reached Felicity street. The collision occurred in the Felicity street intersection, when the Buick car struck the plaintiff's ambulance near the right rear wheel, the ambulance having almost succeeded in crossing the intersection. After the accident the ambulance continued forward a short distance along its course, out of control, and tottered over and onto a parked automobile on Felicity street about 20 feet from the intersection. The Buick remained practically at a standstill.

The negligence of the driver of the Buick automobile is alleged to consist in his failure to observe the traffic ordinance, No. 13,-702, relative to semaphore signals, in that he entered the intersection on a red, or unfavorable, light. The pertinent sections of the traffic ordinance read as follows:

· "3. *Traffic Control Signal Legend.* (a) Whenever traffic at an intersection is controlled by traffic control signals exhibiting colored lights or the words 'Go', 'Caution' and 'Stop' said lights and terms shall indicate as follows:

"'Green' or 'Go'—Traffic facing the signal may proceed, except that vehicular traffic shall yield the right of way to pedestrians and vehicles lawfully within a crosswalk or the intersection at the time such signal is exhibited.

"'Amber' or 'Caution,' when shown alone following the green or 'Go'—Traffic facing the signal shall stop before entering the nearest crosswalk at the intersection unless so close to the intersection that a stop cannot be made in safety.

"'Red' or 'Stop'—Traffic facing the signal shall stop before entering the nearest crosswalk ·at the intersection or at such other points as may be designated by the Commissioner of Public Safety, and remain standing until green or 'Go' is shown alone. * * *"

·There is considerable evidence in the record concerning the prevailing semaphore lights, and, while some of the testimony is to the contrary, it clearly preponderates to the effect that the Buick car entered the intersection on the red light in violation of the traffic ordinance, and we so hold.

The plea of contributory negligence is vigorously and earnestly insisted upon. In the words of counsel, "plaintiff's driver was guilty of gross contributory negligence by his reckless driving, his inattention to traffic rules, reckless and unsafe speed at which he was driving, and his reckless driving immediately in front of respondent Dunne's car."

Stratford A. Chappital, the driver of the ambulance, testified that he saw the Dunne car coming up Prytania street and approaching the intersection of Urania street, and he also saw it when it crossed on the red light. Counsel argues that if Chappital. saw the Dunne car crossing the red light and entering the Urania street intersection, it was his duty to stop and permit Dunne to pass, regardless of Dunne's negligence in crossing on the red light, because Chappital had the last clear chance to avoid the accident. The faster the speed of the Dunne car, which, in the petition, is placed at 45 miles ,per hour, the greater necessity there was, as counsel sees it, for·Chappital to bring his car to a stop. Our attention is called to the distance between the Urania street and the Felicity street crossing, which, measured from the center of each street, is about 60 feet. That distance, it is argued, was more than sufficient to permit Chappital, who, according to his own testimony, was going 20 miles an hour, to stop his car. It is said that the ambulance was traveling very fast, the driver being anxious to deliver the injured negro at the Flint-Goodridge Hospital some distance away, and there is some testimony in the record to that effect, but not sufficient to establish the fact of excessive speed, particularly in view of the special exception which the traffic law makes of emergency vehicles.

The maximum speed permitted under the traffic ordinance for streets controlled at intersections by "traffic officers or 'stop' and 'go' signals" is 20 miles an hour. Article 5, par. 3, Ordinance No. 13,702, C. C. S. An ambulance, however, is classed as an emergency vehicle under article 1 of the same ordinance, and article 7 thereof reads as follows: "The provisions of this Ordinance regulating the movement, parking and standing of vehicles shall not apply to authorized emergency vehicles as defined in this Ordinance while the operator of such vehicle is

driving the same in an emergency in the necessary performance of public duties. This exemption shall not, however, protect the operator of any such vehicle from the consequences of a reckless disregard of the safety of others, and provided, also, that he shall observe all traffic signs as to direction of travel and observe all traffic signals."

However, we will assume, as opposing counsel contends, that the ambulance was going very fast, say 40 miles an hour, or approximately 60 feet a second. The intersection is 40 feet wide. If, therefore, the ambulance driver saw the Dunne car after it had crossed the red light and after he entered the intersection, there would be only a small fraction of a second before he reached the middle of the intersection, where the collision occurred, and, if his speed was half that great, as his counsel contends, there would still be less than a second before the crash. The evidence is to the effect that the driver of the ambulance saw the Dunne car running over the red light at about the time he entered the intersection on the green light. He certainly could not have seen it at a point very distant from the intersection because of the presence of a store known as Skardon's Grocery, which marks the division between the two converging streets at the Prytania intersection. Obviously, in the fraction of a second allowed the driver of the ambulance for consideration of how best to avoid a collision with the Dunne car, no fault can be imputed to him in determining to go forward without attempting to slacken, or perhaps increasing his speed, rather than to attempt to stop. The rule with respect to the action of drivers in an emergency is clearly stated in Buckner v. Powers, 12 La. App. 630, 125 So. 744, 748: "Counsel then proceeded with the argument that defendant's driver lost control of his car and swerved to the left, when he should have gone straight ahead or veered to the right. It is probably true, as already stated, that defendant's driver made a mistake in turning to the left, instead of the right; but his mistake in that respect cannot be charged against him as negligence. He was confronted with a sudden emergency. Plaintiff's car came into the street immediately in front of him. He acted quickly and under impulse. One in peril, or who sees another in peril, when immediate action is necessary to avoid it, cannot exercise the same presence of mind and cool deliberation as under other circumstances."

See, also, Kennedy v. Opdenweyer, 11 La. App. 532, 121 So. 636, 123 So. 906; Hunt v. Jones, 14 La. App. 520, 130 So. 138; Buckner v. Powers, 12 La. App. 630, 125 So. 744; Rosen v. Lloveras (La. App.) 148 So. 734; Martin v. Cazedessus, 15 La. App. 100, 130 So. 129; Mitchell v. Ernesto (La. App.) 153 So. 66.

Nor is it by any means certain that an effort to stop the car would have been advisable. The long and short of the matter is that the Dunne car drove over and disregarded the red or "stop" semaphore light, a course of action which could not have been anticipated by the driver of the ambulance, who can only be held guilty of contributory negligence if there was sufficient time, after he became aware of the negligent conduct of the driver of the Dunne car, to have taken some action which would have avoided a collision, and failed to do so. In the instant case, as we have shown, there was only a fraction of a second, which is obviously too brief for considerate action. Moreover, there is no reason to believe that any different course would have had a different result. Abel v. Gulf Refining Co. (La. App.) 143 So. 82.

The quantum of damages does not appear to be in dispute.

For the reasons assigned, the judgment appealed from will be affirmed.

Affirmed.

LECHE, J., absent, takes no part.

JANVIER, Judge (concurring).

I concur in the decree, and I agree, in fact, with practically everything that is said in the opinion. However, I do not feel that paragraph 3 of article 5 of Ordinance No. 13,702, C. C. S., affords to the owner or to the driver of an ambulance protection from civil liability for the results of negligence I believe that that paragraph of the ordinance was included merely to avoid the possibility of criminal prosecution. Berry on Automobiles (6th Ed.) vol. 1, p. 248; Huddy Enc. of Automobile Law, vol. 3-4, § 170.