HARDY, Judge.
This is an action by plaintiff, a guest passenger in a car involved in an intersec-tional collision with a truck of defendant, Wheeling Pipeline Company, in which he seeks recovery of damages against said defendant and its insurer. After trial there was judgment in favor of plaintiff, from which defendants have appealed. Subsequent to judgment and prior to hearing of this appeal the plaintiff died and his heirs were substituted as parties plaintiff.
The accident occurred early in the afternoon of May 3, 1952, at a T-intersection of two graded, gravel-topped roads in Webster Parish. At the time plaintiff was a guest passenger in a 1938 Ford sedan owned and driven by one Glen Caswell, which was traveling in a southerly direction along a north and south road- The tank truck f defendant Pipeline Company, driven by Jacle Davis> headed east on a connecting gravel road, had reached the dead-end intersection of the road and proceeded into the intersection almost to the center thereof when it was brought to a complete stop by the driver as he perceived the Caswell car approaching from the north at a high rate of speed. It is established that to the north of the intersection the road on which Cas-well’s car was approaching rises to the crest of a hill some 270 feet distant .from the intersection, at which crest the road elevation is approximately 6.5 feet above the elevation at the intersection. Continuing to the north the elevation declines on the other side of the crest at about the same rate. The engineer, who prepared the surveys and profile plat introduced in evidence by defendant, testified that a motor vehicle traveling south would first become visible to one at the intersection, assuming the elevation of the observer as being 4^4 feet, approximately 400 feet north of the intersection. The effect of this evidence is to indicate, under the circumstances of this case, that Davis, driver of the defendant’s truck, could have perceived, by close observation, the approach of the Caswell ■ car at a distance of 400 feet, more or less.
We think it is clearly established by the testimony of witnesses that the Cas-well car was being driven at an excessive rate of speed; that the driver thereof was not maintaining a propér lookout; that, as a consequence, there can be no question as to the negligence of Caswell which was unquestionably a proximate cause of the accident. This was the’ finding of our learned brother of the district court, who stated the same in his opinion as follows:
“It is my opinion that. Mr. Caswell was operating his vehicle in a negligent manner. His speed was. estimated by various witnesses from 40 to 60 miles per hour, and I am inclined to believe that he. was travfeling approximately 50 miles per hour just prior to the acci *108 dent. I, also, am of the opinion that he should have seen Mr. Davis as he entered the intersection in time to avoid the accident.”
With the above finding we are in complete accord, and it follows that the sole question which remains for determination is whether the driver of defendant’s truck was guilty of any negligence which was a proximate or 'contributing cause of the accident.
The district judge concluded that Davis, driver of defendant’s truck, was guilty of negligence and summed up his finding on this point as follows:
“According to defendant’s own witness he could have seen Mr. Caswell’s car some 400. feet away, even after entering the intersection and even further away before he entered the intersection. There was nothing to obstruct his view and if Mr. Caswell’s vehicle was beyond the crest of the hill, as he contends, when he proceeded into the intersection, he would have had ample time to have completed the turn. Whether or not he was watching Mr. Wimberly as he entered the intersection, or whether he neglected to look to his left, I cannot say, but I am convinced that he did not look to his left, until he had started into the intersection.”
In our opinion the pertinent facts were well established and are singularly free from material conflict. As Davis approached the dead-end intersection he slowed his truck and noted that to his right another truck, headed north, driven by one Wimberly, accompanied by his wife, had come to a stop to await Davis’ turn to the south. Wimberly, after the Davis truck had cleared the intersection, intended to turn to his left and proceed west along the road which defendant’s truck had just traveled. Davis testified that he then looked to the left,, perceived no approaching traffic, changed his gear and started into the intersection; that just as he entered the intersecting road he saw the Caswell car come over the crest of the hill. Davis’ testimony is so clear that we quote the ■pertinent portion thereof as follows:
“Q. Well, now, tell the Court just exactly how this accident happened? A. Well, I eased up to this other road that Mr. Wimberly was sitting on over there, fixing to turn in there, and I looked down there and saw that he was fixing to turn in there, and I looked up the other road and there wasn’t anything coming, and I changed gear on the truck and started out into the road. Just as I started to proceed into the road this car popped up on this hill.
“Q. Where was ‘this hill’ that you refer to? Where was that hill? A. It was on the road that this car was coming on.
“Q. What direction was that from you? Was that from your left? A. From my left, yes.
“Q. How far was this car that you referred to from this intersection? A. Well, I couldn’t say just exactly — you mean the car or the hill?
“Q. How far was the top of this hill that you referred to from this intersection? A. Well, as I say, I couldn’t say just exactly. I would figure it was somewhere in three or four hundred feet, something like that. I can’t say for sure, because you can’t judge anything like that exactly.
“Q. Go ahead and tell us how the accident happened? A. Well, I hit on my brakes when I saw him coming. I knew he didn’t see me, and he had started coming down the road, and he came on down there and he had started to slipping and sliding up there, and he come on down and slid into the right-hand side of my bumper rachet, and it kind of turned around crosswise the road. If I hadn’t have had my brakes on he would have knocked me out of the road the way he was coming down there.
*109 "Q. As you entered — or started to enter this road, were you coming straight across this road, or going to make a turn, or what? A. I was going to turn to the left.
“Q. As you started entering this road did you look up to your left for anything that might be coming, any oncoming traffic? A. Yes.
“Q. Could you see any automobile coming? A. No, sir.
“Q. When did you see this automobile? A. Just as my front end of my truck started to enter the road I was looking up this way, coming out, and I knew Mr. Wimberly was coming, and I saw there wasn’t anything happening that way, and I had looked at him, and he had done pulled up over there' and stopped to turn into this road.
“Q. When did you first see the other automobile? A. Just as the front end of it popped up over this hill.
“Q. What did you do then? A. I hit on my brakes and stopped.
“Q. How far did you move after' you hit on your brakes? A. I wasn’t going no fast speed. I wasn’t traveling at no speed. If I had I would have gone right up there.
“Q. Approximately how fast were you going as you entered this intersection? A. I was just barely moving.
“Q. When this car topped the hill there approximately what rate of speed was he going, or coming? A. I don’t know, but it was coming at about all it could come. I know that.
“Q. Did you see any evidence of the driver of that car applying his brakes? A. Yes, you could tell that he cut over — he cut down there in about half of the distance from the top of the hill in front of the negro house there, that is where he hit on his brakes, and you could tell he had them on, and one wheel was a little tighter than the other,' and that turned him over on the.road, and he come on down, and went into the righthand corner of this truck, hitting it on the side of his car.
“Q. How far, approximately, Mr. Davis, did this car slide as it approached you before it collided with your truck, or with the truck that you were driving? A. I couldn’t say positively.
“Q. Could you give us a fair idea? A. Well, I figure it was somewhere between — just guessing at it, because I can’t say for sure — it was somewhere between seventy-five and a hundred feet, probably more than that. I can’t say for sure, because I don’t know what it was, and I haven’t measured it.
“Q. You haven’t measured it? A. No, sir.
“Do. you recall any houses in the area? A. Yes, there was a negro house right up there above there.
“Q. How far from this negro house was it that this vehicle started to skidding? A. I would say that it was practically right close to the front of the negro house.
“Q. That is where he started to sliding? A. Yes, sir, and he jiist kept coming on. He had already made the application on bis brakes, and it turned him sideways, and he kept coming going sideways from one side of the road to the other and finally he hit the front bumper of this truck.
“Q. Was yoür car in motion when this collision occurred? A. No, sir, it was standing still.”
The major points of the Davis testimony as above noted were substantially corroborated by both Mr. and Mrs. Wimberly, who were' in the best position of any of the witnesses to make clear observation of ■the actions of the drivers of both the vehicles involved in the collision. Further corroboration is found in the testimony *110 of defendant’s witness, Boyd Haynes, who was also a passenger in the Caswell car.
From these facts we are confronted with the responsibility of determining whether Davis was guilty of negligence. While it is true that he could have seen the Caswell car at a distance of approximately 400 feet from the intersection, his failure to observe its approach at this distance is not in itself a factor constituting negligence. If he had observed the car approaching from the other side of the crest of the hill, he was under no legal obligation to reach the conclusion that it was traveling at a grossly excessive rate of speed and that it would not respect his entry into the intersection. In this connection it must be borne in mind that Davis had the right-of-way under the provisions of LSA-R.S. 32:237, which reads as follows :
“When two vehicles approach or enter an intersection at approximately the same time, the driver approaching from the right shall have the right of way. * * *
“The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of his vehicle * *
The facts of the instant case are even more favorable to defendant’s position than the provisions of the statute, for no question is involved as to two vehicles approaching or entering “an intersection at approximately the same time”. Davis had not only approached but had entered the intersection and brought his truck to a stop when the Caswell automobile was still some 200 feet distant. The driver of an automobile approaching or entering an intersection is properly held to the legal responsibility of seeing the approach of traffic which could and should have been seen. •However, this rule has not been extended to include the legal requirement that a motorist approaching or entering an intersection is under the responsibility of seeing everything that can be seen, no matter at what distance away. On the contrary, he has the right to rely upon the assumption that approaching vehicles on an intersecting road or street are operated at a reasonable rate of speed and maintained under proper control. Spencer v. Crain, La.App., 53 So.2d 416 (quoting from Blashfield Cyc. of Automobile Law, Volume 2, Section 1026); Allen v. Metropolitan Casualty Insurance Co., La.App., 190 So. 163, 165; Huddy Enc. of Automobile Law, 9th Ed., Volume 34, pages 270-271.
We think it is conclusively established that defendant’s truck was at a complete stop with the front end only a few feet out onto the intersection when the front bumper was sideswiped by the Cas-well automobile, which had been skidding sideways down the road for an appreciable distance.
Our appreciation of the facts prohibits any conclusion of negligence as against the driver of the defendant’s truck.
We have considered the authorities relied upon by plaintiff and cited in counsel’s brief as follows: Hartford Fire Ins. Co. v. Romero, La.App., 5 So.2d 208 (erroneously cited in counsel’s brief as 7 So.2d) ; Cole v. Sherrill, La.App., 7 So.2d 205; Miller v. Brown, La.App., 59 So.2d 725; Pierce Co. v. Hutson Sand & Gravel Co., La.App., 61 So.2d 359.
We do not find that any of these authorities are appropriate inasmuch as they involve factual conditions and circumstances which are either completely or substantially at variance with those which we have found to exist in the instant case.
In view of our finding of facts as above set forth and the conclusion reached therefrom, it is unnecessary to consider the alleged contributory negligence of plaintiff, who occupied the status of a guest passenger in the Caswell car.
For the reasons assigned the judgment from which appealed is reversed and set aside and there is now judgment in favor of defendant rejecting plaintiff’s demands, together with all costs.