No. 665

First Circuit

---

MARTIN v. CAZEDESSUS

---

(October 8, 1930. Opinion and Decree.)
(December 1, 1930. Rehearing Refused.)
(January 5, 1931. Writs of Certiorari and
Review Refused by Supreme Court.)

---

Taylor & Parker, of Baton Rouge, attorneys for plaintiff, appellant.

Cross & Moyse, of Baton Rouge, and Spearing & Mabry, of New Orleans, attorneys for defendant, appellee.

LeBLANC, J. An automobile collision at Dufrocq and America streets, in the city of Baton Rouge, on January 24, 1929, gave rise to this damage suit.

The plaintiff is Dr. J. I. Martin whose minor daughter, Miss Margaret Martin, was an invited guest in the car of the defendant, Mr. Eugene Cazedessus. The car was being driven at the time by Mr. Cazedessus' minor son, Camille, and another

young man, Donald Ogden, was also a guest passenger.

The suit is brought by Dr. Martin for the use and benefit of his minor daughter, who, he alleges, sustained a severe foot injury in the accident. Charges of negligence by reason of careless and reckless driving are made against young Cazedessus, for which, it is alleged, his father is liable in damages for the young lady's injuries.

The total amount sought to be recovered is $10,871, the principal item being $8,000, for having been deprived of exercising her chosen profession of toe dancing for which she had been preparing and training herself over a period of several years, and $2,000 for physical and mental pain and suffering. The other items consist of doctors' and medical bills and expenses, and the sum of $500 for having been deprived of the honor and pleasure of graduating with her class at the public high school commencement during the summer of that year.

The answer of the defendant denies practically all the allegations of fact and particularly those of negligence on the part of his minor son, and contains averments to the effect that the accident was due solely and only to the excessive speed, wanton negligence, and lack of care on the part of the negro driver of the car with which his automobile collided.

The trial in the lower court resulted in a judgment in favor of the defendant, dismissing the plaintiff's suit, and this appeal was taken.

The undisputed facts, up to the time of the accident, except with regard to the speed at which defendant's son was driving, are as follows: Early in the evening of the accident, at about 7 o'clock, Camille Cazedessus went out for a ride in his father's Buick coupe. He called for his friend Donald Ogden, and together they drove about the city, having no particular destination or purpose in view. They happened to stop at the Louisiana Bakery Shop where a friend named Oertling worked. In conversation there, it was suggested by Oertling, who seemed to have been an admirer of Miss Martin, that they go for her and take her to the shop. They then called her over telephone, and, on finding out that it was agreeable to her, Cazedessus and Ogden drove over to her home to get her. They all three got into the car, Cazedessus at the steering wheel, Miss Martin occupying the center of the seat, and young Ogden, the right-hand side. In these positions, they rode about the city for nearly two hours. The car apparently was running in perfect condition and the headlights were burning brightly. Some time between 10:30 and 11:00 o'clock, they were on Dufrocq street, going north, and nearing the intersection of America street, at which point the accident occurred.

Dufrocq street is considered one of the principal thoroughfares of the city of Baton Rouge. It runs north and south, is thirty-six feet wide, and the street car track, five feet wide, runs right through the center. America street is twenty-four feet in width, runs east and west and intersects Dufrocq street completely. The southeast corner of these two streets is open. There is a house on the corner, but it is some distance from the meeting point of the streets and traffic going north on Dufrocq street is clearly visible to a driver of an automobile coming west on America street, and likewise traffic going west on America street to the automobile driver going north on Dufrocq street. Traffic going over Dufrocq street has the right of

way over that running on America street.

According to his own testimony, young Cazedessus was driving at about twenty-five miles per hour. Ogden, who was used as a witness by the plaintiff, says that they were traveling between twenty and twenty-five miles. Miss Martin testifies that they were going at the rate of thirty-five miles per hour. The record contains a written and signed statement given to the claim adjuster of the insurance company which carried Mr. Cazedessus' liability insurance, some time after the accident by Camille Cazedessus, in which it is distinctly stated that the car was going at a speed of twenty-five miles an hour. When this statement was made, there were present the claim adjuster, Mr. J. J. Hooley, Dr. J. I. Martin, Miss Martin herself, and Donald Ogden. After it had been read to them and signed by Camille Cazedessus, it was presented to Ogden and Miss Martin and signed by them, with the following notation appearing above the signature of each:

"I have also read the above and same is true and correct."

It appears, moreover, that Miss Martin did not sign the statement before she had asked her father if it was all right, and he had read it over and told her that he saw nothing wrong with it. Miss Martin, on the witness stand, unsuccessfully attempted to show that the statement offered in evidence was not the one she had signed, and she was otherwise unable to reconcile her estimate of a speed of thirty-five miles per hour, given on the witness stand, with that of twenty-five miles appearing in the statement approved over her signature as being true and correct. Charlie Brown, the negro driver of the other car, swears that he did not see the Cazedessus car until it came in contact with his, so, naturally he

knows nothing about the speed at which it was going. Under the evidence before us on this point, it is reasonable to conclude that young Cazedessus was driving at about twenty-five miles per hour.

We do not believe that a speed of twenty-five miles on a right of way street, between 10:00 and 11:00 o'clock at night, with no traffic in sight, constitutes reckless and careless driving of an automobile. If, then, Cazedessus was not negligent in this respect, was there anything else he did or failed to do which may be considered careless and reckless and which might have caused the accident?

According to his version of the collision, when they were about fifty feet from the intersection of America street he saw the other car, which was a Ford coupe, coming from the east on America street. The Ford was also about fifty feet from the intersecting point of the two streets. As he was on the right of way street, he had every reason to believe, as he says he did, that the other car would slow down, if not stop completely, on reaching the intersection. He was about the center of Dufrocq street, riding over the street car tracks. Anticipating that the driver of the other car might only slacken his speed instead of stopping entirely, he pulled over slightly to the left in order to make sure that he would pass in front of him. The nearer he reached the center of the intersecting street, however, the more he realized that the negro driver not only would not stop, but that, on the contrary, he kept coming on into Dufrocq street at lively rate of speed. Aware then of the emergency that presented itself, he made the hurried decision to swerve his car entirely to the left toward the west side of America street, so as to parallel, if he could, the

Ford coupe which was headed in that direction. His action, no doubt well meant, did not serve the purpose he had in mind. The Ford car was already too far into Dufrocq street, and a collision became inevitable. The right front fender of his car struck the other car in the door which was about the center of the body. Ogden's account of the accident is virtually the same, and, indeed Miss Martin's own testimony is not at any great variance, except with regard to the speed of the Cazedessus car, to which she attributes the negligence of young Cazedessus. Against this evidence, there is the testimony of Charlie Brown, the negro driver of the Ford car. He says that he was about to enter Dufrocq street, and as he did so he almost stopped his car. On cross-examination, he says that he actually came to a stop. He says, further, that he looked south on Dufrocq street and did not see the Cazedessus car coming. As a matter of fact, he says that he never saw it until it actually came in contact with his car. This testimony seems to us to be incredible. If he looked south on Dufrocq, as he says he did, he was bound to have seen the Cazedessus car coming on with its bright, shining lights, and, having seen it so near the intersection of the two streets, ordinary prudence should have prompted him to wait for it to pass. If he did not see it, it was because he did not look, but, instead, kept coming on at the same rate of speed he had been going, and thus confronted the other car with the situation of peril in which the accident became unavoidable. In either event, it was his careless driving which caused the collision.

We believe that young Cazedessus used ordinarily good judgment and acted with the usual deliberation of a person who is placed in the situation that faced him. He assumed, as he had a right to do, being on a right of way street, that the driver of the other car would at least slacken his speed if he did not stop, and that by all means he at least would look on the right of way street for on-coming automobiles. Neither of these things, the other driver did, but continued over the right of way street at the same rate of speed, he had been going before. The danger then became imminent and Cazedessus had to act quickly. The only other possibility of his avoiding the collision (and it seems that it would have been as much a probability as the course he followed) was for him to bring his car to a short stop in as near a distance as he possibly could. Granting that that would have been a better way to avert the accident, his choice of the other cannot be charged against him as negligence. Under the circumstances he was placed, a person is not held to the exercise of the same presence of mind and deliberate judgment as one who apprehends the danger and has sufficient time to avoid it.

In the case of Buckner v. Powers, 12 La. App. 630, 125 So. 744, 748, decided by the Court of Appeal, Second Circuit, and in which are to be found many features of the case before us, the court said:

"Counsel then proceeded with the argument that defendant's driver lost control of his car and swerved to the left, when he should have gone straight ahead or

veered to the right. It is probably true, as already stated, that defendant's driver made a mistake in turning to the left, instead of the right; but his mistake in that respect cannot be charged against him as negligence. He was confronted with a sudden emergency. Plaintiff's car came into the street immediately in front of him. He acted quickly and under impulse. One in peril, or who sees another in peril, when immediate action is necessary to avoid it, cannot exercise the same presence of mind and cool deliberation as under other circumstances."

The court cited, apparently with approval, the following rule, which, as is said in the opinion, is taken from a case note in 27 A. L. R. 1197, and cited in cases from eighteen states, as well as from federal courts:

"* * * An automobile driver, who by the negligence of another, and not by his own negligence, is suddenly confronted by an emergency and is compelled to act instantly to avoid a collision or injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice."

That rule, we think, is applicable in this case, and, in its application, we are constrained to hold young Cazedessus free from negligence.

If there was no negligence on his part, it follows that his father, the defendant herein, bears no liability in favor of the plaintiff, Dr. Martin, for the use and benefit of his minor daughter, for any injuries which she may have sustained.

The judgment of the lower court was correct, and it is therefore affirmed.