## WHITE v. HALLIBURTON OIL WELL CEMENTING CO. et al.

### No. 1868.

Court of Appeal of Louisiana.
First Circuit.

Oct. 5, 1938.

McCoy, King & Jones, of Lake Charles, for appellants.

Griffin T. Hawkins and Jos. J. Tritico, both of Lake Charles, for appellee.

Le BLANC, Judge.

On March 1, 1937, Dr. Henry B. White and his minor son, Henry B. White, Jr., were both injured in an automobile accident which occurred at about 1.30 in the afternoon, on Highway No. 90 which is also known as the Old Spanish Trail, about one mile east of the city of Lake Charles.

Dr. White was returning to his office in Lake Charles from a trip to the country. He had just entered Highway No. 90 from the De Ridder Highway and was trailing a large truck belonging to the Halliburton Oil Well Cementing Company, one of the defendants herein which was being driven by one of its employees, Steve Vardaman, who is also made a party defendant.

Dr. White was driving a Lincoln Zephyr coupe automobile which he had purchased only a few days previous, and his minor son, ten years old, was in the car with him.

The Halliburton Oil Well Cementing Company has its place of business on the south side of Highway No. 90, approximately 750 feet west of the intersection of the De Ridder highway, and the truck Vardaman was driving was on its way there. The building stands some 40 feet away from the south edge of the gravel shoulder of Highway 90 and there is a gravelled surfaced driveway leading to it from that point. It is not near any intersecting street or road and a vehicle approaching it from the east and desiring to enter, has to make a left hand turn in the middle of the highway and cross over the same in order to do so. Vardaman was in the act of making such turn, with Dr. White following him, when the two vehicles collided. Dr. White lost control of his car and it finally landed against a sycamore tree on the north side of the highway about 125 feet from the point of the collision. It was from the force of the impact with the tree that Dr. White's car was practically demolished and he and his son sustained the personal injuries complained of, to recover damages for all of which he has instituted suit for his own behalf and for the use and benefit of his minor son.

In the original petition filed by him, Dr. White claimed $15,700 for himself and $1700 for his child. In a supplemental petition the amount claimed on his own behalf was increased to the sum of $33,200, made up of the following items: pain and suffering physical, $12,500, mental $7000; deformity and temporary disability, $4000; loss of time and earning capacity, $8000; medical expenses $500 and damages to automobile $1200. The damages claimed for his minor son included $1000 for physical pain and suffering, $500 for mental suffering and $200 for medical expenses.

Vardaman, the driver of the truck is charged with negligence in driving at a speed of 20 or 25 miles without due regard to the traffic then existing on the highway and attempting at the same time, to make a sudden left hand turn at the point already described without looking back or through the rear view mirror with which the truck was equipped. He is also charged with gross negligence in failing to give any signal whatever of his intention to make such turn and also in leaving the north lane of travel on the highway and suddenly going into the south lane without observing the White car which was at the moment occupying that lane and in the act of passing ahead.

Vardaman is also charged with being at the time engaged in the course of his duties as an employee of the Halliburton Oil Well Cementing Company and on that ground the latter is sought to be held liable for his acts of negligence. That fact is admitted and it is an issue which is not controverted.

The two defendants filed separate answers but in substance they are the same. They both deny any negligence on the part of Vardaman, driver of the truck, and aver on the contrary that during the time mentioned in plaintiff's petition as covering the period leading to and the moment at which the collision took place he exercised that degree of care and caution required of a prudent driver and complied fully with the provisions of the State Highway Regulatory Statute.

They both aver that he was running at a speed not in excess of 15 miles per hour gradually reducing the same to 5 miles as he prepared to make the turn in the highway to enter his employer's premises. They aver further that he looked in the rear vision mirror of his truck and seeing the plaintiff's car which was then at a distance of more than 200 yards behind him, gave the warning and signal of his intention to turn to the south, and as he was making the turn and his truck had crossed the center stripe in the paved portion of the highway a distance not to exceed 2 feet, plaintiff's car running at a highly excessive and dangerous rate of speed, without warning, ran into the front portion of the truck. They both set out that plaintiff had ample space on the left hand or south side of the highway at that point to use in passing ahead of the truck and could easily have avoided the collision. They aver further that plaintiff's car sustained no damage from its collision with the

truck, but that the same and his injuries as well as those of his minor son were caused by his continued negligence and reckless driving and finally running his car against the sycamore tree on the north side of the highway.

After setting out a complete lack of negligence on the part of Vardaman, and urging that plaintiff's own negligence was the sole and proximate cause of the accident, the defendants both, in the alternative plead contributory negligence against the plaintiff and in the further alternative, they plead the doctrine of last clear chance.

On the issues as thus presented to him the district judge, after a lengthy hearing rendered judgment in favor of the plaintiff, and assigned written reasons therefor. A motion for a rehearing was heard and he again assigned written reasons and overruled the same. The award was in the total sum of $11,549 in favor of Dr. White individually and $600 for and in behalf of his minor son. The award in his favor was reduced by the sum of $20 by the ruling on the motion for rehearing.

. The defendants have appealed and plaintiff has answered the appeal asking for an increase of the amount of the award in both instances, to the sums as originally demanded.

The prominence of the plaintiff as a citizen and a practicing physician and surgeon, the rather unusual size of the demand as well as the ability of counsel engaged on each side, has made of this a bitterly contested litigation. In their zeal and enthusiasm in looking after and protecting the interests of their respective clients, counsel have travelled a bit far afield and mentioned matters which might better have been left unsaid, as a court, in considering a case on an appeal, can only review the findings and the judgment of the trial court on the record as made up during the trial. We have of course discarded all extraneous matter, and, confining ourselves solely to a consideration of the record, find it impossible to say definitely that on the question of liability, the district judge committed manifest error. The determination of that question rests largely on the credibility of certain witnesses who testify that they saw the accident. There is conflict in some of the testimony but the unbending rule has been, and is, that especially where such conflict exist, great weight is attached to the findings of the trial judge.

On the date of the accident, Dr. White was just a few months short of being sixty years old. He testified that he was on his way to his office, due there at 2 o'clock and therefore had perhaps 20 or 30 minutes ahead of him. It is urged that he was pressed for time and for that reason was driving at a fast rate of speed. It is an undisputed fact however, that his minor son who was with him in his car was just recuperating from a recent operation for appendicitis and was asleep on the seat next to him. To us it appears improbable that a man of Dr. White's age, a practicing physician and surgeon, would under those circumstances have been driving his car at an excessive and reckless rate of speed at this point on the highway where the traffic is shown to be always heavily congested. Moreover we have his uncontradicted testimony supported by that of a witness named Dalton Landry, that as he reached highway No. 90 from the De Ridder highway he stopped his car almost completely at the intersection as he says he usually does, and saw the truck which he afterwards trailed and collided with, going by. This all indicates to us that Dr. White was in no undue haste at the time of the accident.

Of the witnesses who claimed to have seen the accident, two of them Walter Goos and Oscar Savoie testified that they were in Goos' car trailing the White car a distance of 50 or 75 yards. They both estimate the speed of the White car at some 20 to 25 miles per hour. Savoie estimates the speed of the truck at 15 to 20 miles which is exactly the rate Vardaman testified he was going before slowing down gradually to approximately 5 miles in order to make the turn in the highway. There is testimony of other witnesses besides that of Vardaman that the White car was going as fast as 45 to 50 miles but we think that it can be reliably said that the preponderance of the testimony shows his speed to have been approximately 25 miles per hour. Thus, with the speed of the two vehicles established at the rate of approximately 20 to 25 miles, and the truck gradually slowing down to 5 miles, we doubt seriously that the accident can be attributed to either one going at an excessive or reckless rate, and must look to some other fault or act of negligence on the part of either driver for its cause.

Dr. White is positive that Vardaman gave no signal by motion of his hand or otherwise of his intention to make a left hand turn in the middle of the highway and Vardaman is equally positive that he held his left hand out as a signal and says that he held it so continually from the time that he passed a certain establishment which is shown to be 375 feet east of the point where he was to make the turn. Dr. White swears positively that as he prepared to pass ahead of the truck he blew the horn of his car; Vardaman states that neither the White car nor any other sounded any horn.

On Vardaman's failure to have signalled his intention to make a left hand turn Dr. White's testimony is corroborated by that of Goos and Savoie who it seems were in a position to make the same observation, as they were also getting ready to follow the White car and pass ahead of the truck. . Vardaman's testimony that. he did signal is supported to some extent by that of a witness named Felix Stone who was standing in front of the Blue Room Tavern at the time the truck passed, and also by that of E. L. Northcutt and J. D. Merrett, both employees of the Halliburton Oil Well Cementing Company. Northcutt says that he was standing in front of the Halliburton company shed and Merrett in the front door of the Halliburton building.

There is some question whether from the place at which he was standing on the north side of the highway, the witness Stone was in as favorable a position as he says he was to have seen the movements of the driver of the truck who occupied the seat on the left hand side, and especially a signal given by him with his left hand. Some doubt is also thrown around the testimony of the other two witnesses by that of Captain Weston Fanguy of the State Highway Police who investigated the accident soon after it occurred. The testimony of the plaintiff and his witnesses seems to preponderate on this important point, one which indicates rather strongly, lack of careful observance on the part of the truck driver who was about to execute this dangerous maneuver on the highway. His own testimony shows further lack of care when he admits that after looking in his rear vision mirror and observing the White car some 300 feet in the rear he never looked again before preparing to make the turn. Had he so looked, doubtless he would have seen the car

approaching nearer and nearer all the time preparing to pass ahead of him, as indeed it had the right to do and he could easily and safely have yielded it the right of way.

Goos and Savoie don't know whether Dr. White sounded his horn or not. The witness Landry to whom we have already referred worked at a filling station on the south side of the highway just west of the intersection of the De Ridder highway. He testified that he saw the truck and the two cars trailing it and whilst he does not know that it was the horn of the White car which he heard, he is nevertheless certain that he did hear the blast of an automobile horn shortly after the cars had passed him. It appears to us however that under his own testimony, Vardaman already had notice of the approach of the White car by having observed it when he looked in the rear vision mirror of his truck, and whether the horn was sounded or not, he might well have anticipated some movement on its part, in view of its position on the highway, and used more precaution than he did under the circumstances. Not only did he fail to look again, but by his own testimony he slowed down his speed and started to make the left hand turn and never did actually stop his truck. The testimony shows that the front wheels had partly crossed the black stripe in the center of the paved portion of the highway when it did come to a stop. From this it can be reasonably assumed that Dr. White's testimony that it was the truck which struck his car is correct. Besides, the inspection made by the district judge of the marks on the damaged car led him to that conclusion.

■ We are satisfied of the correctness of the finding of the trial judge on the point of the negligence of the truck driver, and on the question of liability we come now to a discussion of the plea of contributory negligence.

As we have already stated we do not think that the speed at which either the truck or the car was going had any causal connection with the collision itself. The point which gives us the greatest concern on this plea arises from the fact that Dr. White had a space of more than 15 feet on his left at the point where he was passing ahead of the truck and did not make use of it to safely go by. It is urged on his behalf that he was confronted with a certain emergency created by the driver of

the truck, in which case the law did not hold him to the exercise of that same calm and deliberate judgment as the driver of an automobile who is not placed in such a situation.

The sudden emergency doctrine is well established in the law governing the operation of motor vehicles on the highway and has frequently been applied by the Appellate Courts of this State. To mention at least three cases in which it was applied by this court, we refer to those of Martin v. Cazedessus, 15 La.App. 100, 130 So. 129; Daigle v. Cobb, 18 La.App. 212, 138 So. 213 and Demarco v. Gober, 19 La.App. 236, 140 So. 64.

That Dr. White appreciated the fact that the truck was about to change its movement on the highway is indicated by his own testimony. He says that when he blew his horn the truck veered a little to the right, which movement he took, as he had reason to, to be an invitation to pass ahead. He says he speeded up to about 35 miles and as he did, the truck swept right in and struck his car. In his own words "his first thought was for his boy" who was asleep on the seat next to him. "I was in an emergency there", he says. He held the boy with one hand apparently to save him from a hard jar. He tried to go further to the left but did not have time to clear the truck, which as we have seen had already begun to cross the center stripe in the paved surface of the highway. The force of the impact caused the accelerator of his car to stick and that increased his speed. He tried to kick it loose and at the same time applied his brakes, but all to no avail. The car continued across the highway and ran into the ditch next to it and finally landed against the sycamore tree.

We can very well conceive of the predicament in which Dr. White found himself. Truly, "he was in an emergency, there" and under the circumstances, he should be exonerated from the charges of negligence urged against him.

Counsel for defendants contend that the doctrine of sudden emergency can not be successfully invoked on his behalf because Dr. White himself created the emergency. We can not agree to this as unquestionably, in our opinion, it was the actions of the truck driver, as we have tried to describe them, which brought about the situation which presented itself suddenly to Dr. White and caused that confusion in which he did not have time to exercise his best judgment with which he might otherwise have saved himself from the accident. It was the fault of the truck driver which caused the collision between the two vehicles and it was the collision which set the accident in motion. For this fault on his part, the defendant Vardaman, driver of the truck, and his employer, Halliburton Oil Well Cementing Company are properly held liable to the plaintiff for the damages which resulted therefrom.

We come now to a discussion of that phase of the case in which there is reason to disagree with the findings of the district judge. That is on the question of the amount of the various awards made by him. Dr. White himself sustained rather severe injuries which no doubt interrupted his practice entirely for some weeks and caused him some losses for several months thereafter. He is no doubt entitled to substantial damages but we do believe that his standing as a citizen in his community and his reputation as a physician and surgeon had some bearing on the question when the district judge came to assess the damages in the case.

For doctors, nurses and hospital bills, the district judge awarded the plaintiff the sum of $549, of which $500 was for bills incurred in his own behalf and $49 on account of his minor son. This award does not seem to be disputed and as the bills introduced in evidence amount to really more than $500 for expenses incurred on behalf of Dr. White, the award can not very well be disturbed.

The district judge correctly found also that there was no testimony to support any demand for deformity.

The amount of $600 awarded plaintiff for and on behalf of his minor son is not questioned by counsel for defendant. Counsel for plaintiff urged that this should be increased, but we see no reason to change that amount.

That leaves us now with the three seriously contested items, to-wit: that for loss of earnings for which plaintiff was allowed $4800, that for pain and suffering, for which he was awarded $5000 and that of $1180 for damages to his automobile.

Taking up the last of these three items first we find, as did the district judge, that the automobile was practically new, having been in service only four or five days.

It had a speedometer reading of 650 miles. It had cost $1355 and is shown to have been damaged to the extent that it had only a $175 salvage value. We note a decision of the Supreme Court which might properly be cited as authority to support the award on this item. That is the case of Vaccaro v. Favrot, 170 La. 483, 128 So. 284. The car involved in that case had a greater mileage record at the time of the accident than Dr. White's car, and it was also damaged beyond repair, and in affirming an award made by the Court of Appeal of Orleans Parish, 13 La.App. 120, 125 So. 296, which had previously affirmed the judgment of the district court, the plaintiff was allowed to recover the value of the automobile, less the trade in value of the wreckage.

 This is the basis on which the award of $1180 was made by the district judge in the present case and which under that decision is found to be correct.

Taking up next the item for impairment and loss of earning capacity, we find that counsel for plaintiff could have been far more careful and specific in presenting their proof. It was no doubt shown that Dr. White was incapacitated to a certain extent as a result of his injuries and under their own pleadings the district judge was entirely correct in limiting them to a recovery for the period of six months. The fault to be found in the presentation of this item is with regard to the matter of furnishing proof on which to base an amount. The amount naturally depended on what were Dr. White's average earnings before the time he was injured. All that was produced for the record was his own statement that he earned on an average of twelve to fifteen hundred dollars per month. Defendants did not produce any testimony to contradict the statements made by the plaintiff, and the district judge accepted the smaller of the two figures on which to base his award. On this basis he allowed $1200 for each of the first two months and $600 for each of the succeeding six months.

 When Dr. White was asked to state what his average monthly income was between the time he returned to work after his injury and up to August, which was a period of five months only he answered that it was from $700 to $750. After August or rather during the month of August, it reached a peak of $1000, and it is reasonable to assume that thereafter

he continued to do as well. Taking the months from April to August during which he earned $700 to $750 and the months from August to October, in order to make up the six months period, during which his income was $1000 per month, we find that for the entire six months period his earnings were approximately $5000. We think we are safe in placing the average at $800 per month, and find therefore that he earned two-thirds of his former monthly average income and was consequently incapacitated to the extent that he lost one-third of that income, or, the sum of $400 per month, which for the six months period would show loss of earnings totalling $2400. We think that that amount arrived at on the basis on which we have calculated it from his own testimony, is fair and just.

On the last item on which there is serious dispute, we think that again the award made by the district judge was too liberal. Dr. White suffered a severe shock and loss of blood. He sustained an incise wound over his left eyelid, severe contusions and some concussion of the brain. His most severe injury seems to have been a crushing blow to his chest which caused hemorrhages in the space between the lungs and left him with internal adhesions to the pericardium, all of which had a rather pronounced effect on his heart. For several days his life was despaired of, but it is undisputed that two weeks after the accident this fear had been dispelled and he was well on the road to recovery. As a matter of fact, some five or six weeks after, although laboring under a handicap he was able to resume the practice of his profession.

The serious aspect with regard to this item may be said to be the mental fear which Dr. White has to harbor due to the fact that some of the doctors have told him that his life would be shortened because of the condition in which his heart was left as a result of his injury. That thought no doubt must weigh pretty heavily on a man's mind and the only consoling feature which may detract from it in any manner in this case arises from the fact that Dr. White has already reached an age beyond the average man's years.

 All told therefore, besides the rather short period of suffering during his stay in the hospital and some time thereafter, the only suffering which we can find that Dr. White endured would arise from

the thought that this accident has brought about a heart condition from which he may not live as long as he would have had the accident not taken place. We are of the opinion that an award of $3000 on this item is proper and consequently will reduce that made by the district judge to that sum.

Because of the reduction in these items it becomes necessary for us to amend the judgment appealed from, and for the reasons stated it is now ordered that the judgment appealed from be amended by reducing the amount of the award made in favor of the plaintiff Dr. Henry B. White individually, from the sum of $11529, to the sum of $7,129, and that as thus amended it be affirmed.